## ADAMS et al. v. SOUTHERN BELL TELEPHONE & TELEGRAPH CO.

(Circuit Court of Appeals, Fourth Circuit. February 5, 1924.)

No. 2115.

1. **Master and servant** ⊂⊃302(6)—**Failure to charge employer was liable, if employee's act of knocking out ashes from pipe caused fire, held not erroneous.**

   Where a telephone repairman, sent to find out if plaintiff's telephone was out of order, emptied his pipe over the porch rail, and a short time after he left the house burned down, the court's failure to charge that repairman was acting in the scope of his employment, and that if the fire was the result of his act the company was liable, *held* not erroneous, since, even if he had been in company's service at the time, this would not be sufficient in itself to impose liability.

2. **Negligence** ⊂⊃21—**Emptying pipe over porch rail not inherently dangerous.**

   There is nothing inherently dangerous in smoking pipes on country porches, nor in emptying them over the porch rail to the ground, though under some circumstances it may be dangerous.

---

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. Trial ⬳193(3)—Not error for judge to express opinion on facts, if jury understands they are not bound thereby.

While the question of whether an employee was acting in the scope of his employment is for the jury, there was no harm in using an apt illustration to bring the application of the rule within the jury's daily experiences, even if it did indicate judge's opinion, since the judge has a right to express his opinion, if he makes jury understand that they are not bound to follow it.

4. Appeal and error ⬳215(1)—Litigant silently acquiescing in charges cannot object after verdict goes against him.

Where a litigant silently acquiesces in charges and rulings of the court so long as there is a possibility that the jury is with him, he cannot, when verdict goes against him, avail himself of District Court rule No. 43, authorizing the court in the interest of justice to permit exceptions to the charge after verdict.

In Error to the District Court of the United States for the Eastern District of South Carolina, at Columbia; Henry A. Middleton Smith, Judge.

Action by W. J. Adams and others against the Southern Bell Telephone & Telegraph Company. Judgment for defendant, and plaintiffs bring error. Affirmed.

L. D. Lide, of Marion, S. C., and T. I. Rogers, of Bennettsville, S. C., for plaintiffs in error.

William S. Nelson, of Columbia, S. C. (Nelson & Mullins, of Columbia, S. C., S. S. Tison and Tison & Miller, all of Bennettsville, S. C., and E. D. Smith, of Atlanta, Ga., on the brief), for defendant in error.

Before WOODS, WADDILL, and ROSE, Circuit Judges.

ROSE, Circuit Judge. The plaintiffs in error were plaintiffs below. One of them owned a country house in Marlboro county, S. C., and every one of them had personal property within it. It and its contents were destroyed by fire, and they are seeking compensation for their losses, which in their view were the direct consequences of an act of negligence of one Heeney, committed in the course and within the scope of his employment as a repairman of defendant's. Nobody was in the house when the fire broke out. All the family had left on the morning of the preceding day to pay a visit, and none of them returned until after the harm had been done. There was in the house a telephone connected with the exchange at Gibson, a place five-eighths of a mile away. The exchange operator did not know that this residence was temporarily deserted. She had been unable to get answers to the calls she had made on the telephone, and she thought the instrument might be out of order. In ordinary course, she reported her suspicion to Heeney, and he, in the discharge of one of the duties incident to his employment, got into the Ford car used for such purposes and went out to the house. When he reached it, he went up on its porch and knocked first at the front and then at the side door but got no response. Upon the chance that some one would turn up, he remained on the porch awhile and then left. His stay at the house was a short one, variously estimated by witnesses as lasting from 7 to 15 minutes.

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Two persons testified that while on the porch he was smoking, and one, who at the time was 95 yards away, swears that before Heeney left he knocked his pipe upon the banister of the porch to get the ashes out of it, and that when he did this he was standing over a rose bush which grew against a wooden lattice under the porch floor. There was evidence that at the time there were dead leaves in and under the bush, and that dried Bermuda grass was all around it, as well as some miscellaneous trash. Heeney saw no fire while he was there, but others discovered it shortly after he left. Some of the early arrivals at the scene thought that the blaze started at or near the spot at which the ashes must have fallen, if they fell anywhere. Others formed a different impression as to where it originated. Whether the ashes were knocked out of the pipe, and, if so, whether they caused the fire, were questions of fact, upon which the jury might reasonably have found either way. What their findings were upon either of them there is no means of knowing, for the verdict for the defendant may mean that they answered one or both of them in the negative, but is equally consistent with the opposite conclusion, provided they were of opinion that Heeney, when he knocked the ashes out of his pipe, was not acting within the scope of his employment.

[1] The plaintiff's chief complaint is that this last question was left to the jury at all. They say that upon the uncontradicted evidence the court below should have told the jury that the act of negligence charged against Heeney, if it was committed, was within the scope of his employment, and, if their finding was that he had been guilty of it, and that the fire was the result, their verdict must be for the plaintiffs. Many authorities may be cited in support of the course taken by the learned judge below. 26 Cyc. 1533; 18 Ruling Case Law, 795; 6 Labatt's Master and Servant, 6857; McLaughlin v. Cloquet Tie & P. Co., 119 Minn. 454, 138 N. W. 434, 49 L. R. A. (N. S.) 544; Polatty v. Charleston Railway, 67 S. C. 391, 45 S. E. 932, 100 Am. St. Rep. 750; Ritchie v. Waller, 63 Conn. 155, 28 Atl. 29, 27 L. R. A. 161, 38 Am. St. Rep. 361; Wilson Amusement Co. v. Spangler, 143 Md. 99, 121 Atl. 851.

There may be room for controversy as to whether all or any of them is applicable, where, as here, the relevant facts are not in dispute, and the differences as to the inferences to be drawn from them are chiefly, if not altogether, as to the controlling principles of law. The question, interesting as it is, need not be here further discussed, unless what the plaintiffs say Heeney did was, as a matter of law, within the scope of his employment. If it was not, plaintiffs have suffered naught. If the issue was one upon which the jury should have passed, it has been decided against them. If, on the other hand, the court should have granted the defendant's prayer for an instructed verdict in its favor, the right result has been reached, albeit by a wrong road. Should the court below have told the jury that, if Heeney did what he is charged with having done, the defendant is liable for the resulting damage? While, as Mr. Justice (afterwards Lord) Blackburn said in Williams v. Jones, 3 Hurlstone & Coltman, 600, 609, the point is not one admitting of being elucidated by argument or by decided cases, the plaintiffs are asking us to go farther than, so far as we know, any well-considered decision has thus far gone.

Baldwin's Executor v. Railway Co., 96 Miss. 52, 52 South. 358, is one of the cases relied on by the plaintiffs. In it the defendant's section hands lighted a fire on the right of way to cook their dinner. The flames extended to other property. The defendant was held liable because a part of the regular duty of the men was to keep fires from spreading from the right of way and to extinguish those which originated upon it; while in the otherwise indistinguishable case of Morier v. St. Paul, Minneapolis & Manitoba Ry., 31 Minn. 351, 17 N. W. 952, 47 Am. Rep. 793, the employer was exonerated because it was not shown that the prevention of fire was any part of the duty of the employees concerned. In the instant case, protection of property from fire was not of the things for which defendant employed Heeney.

In Buchannon v. Western Union Telegraph Co., 115 S. C. 433, 106 S. E. 159, 18 A. L. R. 1414, the Supreme Court of South Carolina, by a vote of three judges against two, held the defendant liable for an indecent proposal one of its messengers made to a woman to whose residence he had been sent with a telegraphic remittance to her. The facts of that case are admittedly very different from that before us, but plaintiffs have naturally cited it to show that the employer has been held liable for torts committed for the purely personal purposes of its employees. Assuming that case to have been rightly decided, it is of little assistance here. In it the majority of the court based their conclusion upon the probability that, as the plaintiff was at the time alone in the house, she would not have admitted the messenger, had he not come in defendant's uniform and with a message from it. In the instant case, Heeney never was in plaintiff's residence. He never got any further than any one who wanted to ask a question for his own or some one else's information might lawfully and properly have come.

[2] In Jefferson v. Derbyshire Farmers, Limited, L. R. 1921, 2 K. B. 281, much emphasized by the plaintiffs, the Court of Appeal held the master liable for the damage done by a fire started by a match used by his servant in lighting a cigarette, and then thrown by him on the oil and gasoline wetted floor of a garage. He was at the time in the very act of drawing benzol from a drum to tins. The decision was based upon the ground that the task the servant was set to do was inherently dangerous. One who wished it done was bound to see that its obvious perils were guarded against, and therefore the taking of the necessary precautions was within the scope of the task committed to whoever was told to do it. There is nothing inherently dangerous in smoking pipes on country porches. It is a use to which many, if not most, of them are habitually put. To empty the pipes over the porch rail to the ground is common enough, and not ordinarily dangerous, although under some circumstances it may be. In this case the peril, whatever it was, was not in any wise connected with the work Heeney was sent to do, viz. to find out whether plaintiffs' telephone was out of order, and, if it was, to repair it.

The Court of Appeals distinguished Jefferson v. Derbyshire Farmers, Limited, from the earlier case of Williams v. Jones, in which the Court of Exchequer unanimously held that the master was not liable, a conclusion, however, in which one or two of the judges concurred with

some misgiving. 3 Hurlstone & Coltman, 256. Their decision was affirmed in the Exchequer Chamber by Keating, Smith, and Erle over the dissent of Mellor and Blackburn. 3 Hurlstone & Coltman, 600. In that case, the facts were that a carpenter in the employ of the defendant in a shed in a lumber yard was making a signboard for his master. He dropped on the floor a lighted shaving, with which he was trying to light his pipe, and damage followed. The line of distinction between the two cases is narrow, and it certainly does not lie in the fact that it is not dangerous to drop lighted shavings on the floor of sheds where carpentering is being carried on. It is to be found where the Court of Appeals located it, and that is in the fact that there was no inherent danger in making a signboard, the task and the only task to which in Williams v. Jones the servant was set, and there is peril in transferring benzol from one receptacle to another wherever there is any fire in the vicinity.

The only other decision relied on by the plaintiffs is the New Hampshire case of Palmer v. Keene Forestry Association, 112 Atl. 798, 13 A. L. R. 995. There the defendant had men setting out trees in a field in which the grass was very parched and dry. They smoked while they worked, and one of them dropped a lighted match. The defendant was held liable for the damage which followed, because the court found that it knew or should have known that its men were likely to smoke while on the job. The opinion expressly says that defendant was answerable, not because the dropping of the match into the grass was within the scope of the employment of its men, but because it had reasonable cause to apprehend that a match would be dropped.

Heeney, it is true, was a smoker; but there is nothing in the record to suggest that he smoked when it was dangerous to do so, and surely nothing to put defendant on notice that he was likely to do damage in the way it is said that he did.

The question of the liability of a master resulting from the servant's smoking came before the Supreme Court of Victoria in the case of Heard v. Flannigan, 10 Vict. L. R. Law, 1. There the defendant had bought a part of a stack of hay from the plaintiff. He sent his servant to cut out the hay and tie it up in trusses. The servant, after taking a smoke while at work, put his pipe in the pocket of his waistcoat, in which there were also some loose matches. He laid the waistcoat down at the foot of the stack on a bundle of grass, and went off for five or ten minutes to get some twine to tie up the trusses. When he returned everything was ablaze, the heat of the pipe having ignited the matches. It was held that, while the servant was employed to cut out the hay and to procure lashing to tie up the trusses, smoking was outside the authority given him.

The District Court of Appeal for the Third District of California, in Feeney v. Standard Oil Co., 58 Cal. App. 587, 209 Pac. 85, held that the master was not liable for damage resulting from its servant dropping a match with which he had lighted his cigarette to the floor of a garage upon which, to his knowledge, gasoline had recently been spilled. He was waiting at the garage on his master's business at the time he let the match fall.

The reasons assigned by the court for holding the master liable in such of the above-cited cases as reached that conclusion were not always the same, but none of them are applicable to the controversy now before us.  If the defendant here is answerable, it must be because Heeney, at the moment he is said to have committed the negligent act, was in the service of the defendant and on duty for it, or because, if he had not been in defendant's employ and on its business, he would not have been at the place at which the alleged wrong was or could have been done; but it is clear that neither of these circumstances is in itself sufficient to impose liability.  Walton v. New York Central Sleeping Car Co., 139 Mass. 556, 2 N. E. 101; Driscoll v. Scanlon, 165 Mass. 348, 43 N. E. 100, 52 Am. St. Rep. 523; Bowen v. Illinois Central Railway Co., 136 Fed. 306, 69 C. C. A. 444, 70 L. R. A. 915; Washington Gaslight Co. v. Lansden, 172 U. S. 435, 19 Sup. Ct. 296, 43 L. Ed. 543. It follows that the learned court below did not err in refusing to tell the jury that Heeney was acting within the scope of his employment.

[3] The only other assignment of error assumes that whether Heeney was so acting was a question for the jury, and complains of something the learned judge said about it in his charge.  He gave various illustrations of cases in which a negligent act of the servant was clearly within the scope of his employment, others in which the reverse was obviously true, and also some as to which reasonable men might differ.  As to one of these last, his language was as follows:

"A farmer may be loading up his bags of cotton to go to the gin, and he has to employ drivers, and one of his drivers drives the load of cotton to the gin, and he is responsible for the act of that driver in pursuance of his employment, which is strictly to carry the cotton to the gin and deliver it there.  But suppose, when his driver gets there, of his own foolish head or otherwise, he strikes a match to light his pipe, and that he sets fire to the cotton.  You all know the consequences.  It might be destruction of the gin house, the cotton, and everything concerned.  The question, however, for the jury, would be, if the farmer, legitimately carrying on his farming operations, simply told the driver to carry that load from the farm to the gin and deliver it, whether he was responsible for the unauthorized act of the driver in lighting a match and throwing the burning embers on the cotton."

The plaintiffs make two criticisms on this portion of the charge: First, they say it was so phrased that it showed the judge thought the careless act of the driver was not within the scope of his employment; and, second, they claimed that it suggested to the jury, many of whom, they tell us, were farmers, that, if the verdict was for the plaintiff, a precedent would be established which might at any time cost some farmer dearly.  If whether Heeney, in the alleged emptying of his pipe, was acting in the scope of his employment, was for the jury, that is to say, if it was a question of pure fact, or of mixed fact and law, the judge had the right to express his opinion upon it, assuming that, if he did, he made the jury understand they were not bound to follow it, unless it commended itself to their judgment.  This the charge as a whole shows he did.  If the jury were to pass on the issue at all, there was no harm in using an apt illustration to bring home to them that the rule they were dealing with was not a mere legal abstraction, but that it was capable of concrete application to transactions which were within the purview of their daily experience, and upon which their judgment was therefore of exceptional value.  The illustration ac-

tually used by the judge for this purpose was not unfair to the plaintiffs. Indeed, its assumed facts brought it much nearer to those found in Jefferson v. Derbyshire Farmers, Limited, than to the case at bar. The jury might well have been of the opinion that in the supposititious case the driver was acting within the scope of his duties, while Heeney was not. If what has been said about this particular assignment of error smacks something of unreality, it is because, there being no dispute as to the facts so far as they bear upon the scope of Heeney's employment, it is not easy to see what was left to the jury, other than a question of law; but, as has already been pointed out, if the court had itself ruled on it, the plaintiffs would be precisely where they now find themselves.

[4] We have dealt with plaintiffs' exceptions and the assignments of error based upon them as if they had been taken in due season and were properly before us. The facts are otherwise. As is usual in such cases, it was the defendant, and not the plaintiffs, who asked for a peremptory instruction as to whether Heeney was acting within the scope of his employment in doing what he is said to have done. To the court's refusal to treat that issue as a matter of law it was the defendant, and not the plaintiffs, who excepted. So far·as the record discloses, plaintiffs submitted no requests for an instruction. Their able, experienced, and prudent counsel wanted to get to the jury, and they solicited no doubtful rulings on law, the granting of which might make fruitless the verdict they hoped to obtain. They made no objection to any part of the charge of the judge, and before the jury came in reserved no exception to it. It was not until after the verdict disappointed their expectations that they challenged aught that he had done or said. Then it was they sought to avail themselves of one of the provisions of rule 43 of the District Court, which among other things provides:

"That the court may in the interest of justice, where no undue prejudice will result therefrom, permit exceptions to be taken and noted to the charge to the jury of the presiding judge after the jury may have left the bar and rendered its verdict."

On this subject we can add nothing to what, through the mouth of Circuit Justice Taft, we have already said in Brevard Tanning Co. v. J. F. Mosser Co. (C. C. A.) 288 Fed. 725. The principles there stated did not rest on technical considerations, but on the substance of things. No litigant has the right to gamble with the time of the courts and the money of his adversary, by silently acquiescing in the rulings of the judge so long as there is a possibility that the jury is with him, and then, when the verdict goes against him, busy himself with looking up possible mistakes the judge may have made, in order that by complaining of them he may get a chance before a more friendly jury. The opinion in Brevard Tanning Co. v. J. F. Mosser was not handed down until after the allowance of the bill of exceptions in the instant case. Plaintiffs' exceptions, belated as they were, in our. view disclosed no prejudicial error. We therefore thought it best to take the course we have, but in all cases tried since the decision in Brevard Tanning Co. v. J. F. Mosser Co. it is our purpose to enforce the rule therein so authoritatively set forth.

Affirmed.