## Herr *v.* Simplex Paper Box Corporation, Appellant.

Argued May 17, 1937; reargued January 7, 1938. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*B. M. Zimmerman,* of *Zimmerman, Myers & Kready,* for appellant.

*Chas. W. Eaby,* with him *Harvey B. Lutz,* for appellee.

OPINION BY MR. JUSTICE SCHAFFER, March 31, 1938:

In this action to recover damages for personal injuries caused by burning gasoline, the facts are somewhat unusual and the question of law involved not free from difficulty. In order that we might get the fullest views from both sides we have heard oral argument on two occasions. The appeal is by defendant from the refusal of the trial court to enter judgment in its favor, notwithstanding a verdict for plaintiff.

Plaintiff was employed as a tank truck driver and salesman by an oil company. Defendant's employee, upon whose alleged-to-be negligent act liability in damages upon defendant is sought to be fixed, was employed by it as a truck driver.

Defendant is a manufacturer of paper boxes. Outside its factory is maintained an under-the-surface gasoline tank, gasoline for which was supplied by plaintiff's employer. On the morning the event occurred which gives rise to this suit, plaintiff was engaged in delivering gasoline from a truck into the underground tank. This he accomplished by drawing the gasoline from the tanks on the truck into five gallon cans, carrying it to the underground tank and pouring it through a large funnel into the orifice of the tank which protruded above the surface of the ground. Because he poured it too fast, the gasoline spurted out of the orifice into the air and onto plaintiff's clothing. As this happened, according to plaintiff's story, defendant's employee, Weidner, came out of the factory for the purpose of signing a receipt for the gasoline, as he had done on other occasions, and, when ten feet from plaintiff, struck a match to light a cigarette, thus causing the gasoline fumes in the air to ignite, seriously burning plaintiff. This theory of what brought about the firing of the gasoline was denied by Weidner, who testified that he

lit his cigarette in the garage adjoining the factory, before plaintiff drove up in the gasoline truck, in so doing violating a rule of his employer against smoking, that he was eighteen feet away from plaintiff when the gasoline ignited, and that the cause of its doing so was plaintiff's violently "yanking" the large funnel out of the orifice when the gasoline spurted up, thus causing friction and a resulting spark which set off the gasoline. For the purpose we are asked by defendant to accomplish, the entry of judgment in its favor, we accept plaintiff's version of what occurred.

We then have this situation: an employee of defendant, outside of its factory in the open air, being there for the purpose of signing a receipt in his employer's behalf, strikes a match to light a cigarette, with the result that the man delivering the gasoline is burned. Under this state of facts, is the employer liable in damages to the injured man? We think it would be conceded generally as a legal proposition, as it was at bar, that if there had been no gasoline present, and if in striking the match the flaming head had flown off and injured plaintiff, or if the cigarette had been thrown upon plaintiff and he had been injured, there could be no recovery, because with such acts the employer has nothing to do, they are not an incident of, or part of, or in furtherance of, and therefore not within the scope of, the employee's employment. Does the presence of the gasoline change the picture and the result so far as defendant is concerned? This is not a situation similar to one where the attendant at a garage, while engaged in putting gasoline into a customer's automobile, the better to see, would strike a match, in which case there might well be liability on his employer, because striking the match was concerned with and in aid and furtherance of the act the employee was hired to do. Here, however, in striking the match the servant was doing nothing in furtherance of or in connection with his employer's business.

The difficulty we see, if we are to sustain the recovery, is that, in principle, we are going to fix a liability on employers that apparently has no limit. Thus an employer sends his employee to a store in which gasoline is kept to make a purchase, and the employee strikes a match to light a cigarette, with the result of igniting the gasoline and thereby causing destruction of the store. Is responsibility to be visited on his employer? If a farmer sends his employee to his neighbor's barn on a mission and as a result of the employee's striking a match to light his pipe, the inflammable contents of the barn is set afire and the barn destroyed, is the employer to be mulcted with damages? Approved recovery in this case would answer yes on principle in both instances.

The only filament which unites Weidner's act in lighting the match to his employer is that he was intending to sign a receipt for the gasoline. However, the delivery of the gasoline had not been completed and the receipt was not prepared when Weidner struck the match. Smoking was an act in no way connected with the business of his employer or with service to it. It was something done by Weidner for his own enjoyment and satisfaction. Had there been nothing in the case about signing the receipt, and had Weidner merely stepped out of the building to enjoy a smoke, and the accident had happened, it could not be successfully argued that his employer would be liable, nor do we think it can be with the element of the intended signing of the receipt in the case, because the striking of the match preliminary to smoking had nothing to do with the contemplated act to be performed for the employer.

In our view the best reasoned authorities support the conclusion reached by us. In *Vadyak v. Lehigh & New England R. R. Co.*, 318 Pa. 580, 179 A. 435, where the engineer on defendant's locomotive discharged steam upon the minor plaintiff as he was walking along a path close to the railroad tracks, frightening the boy

and causing him, blinded by the vapors, to step into a depression and fall with his leg under the car wheels, which crushed it, we held there could be no recovery, because there was no suggestion that it was a necessary part of the engineer's duty to open the engine's cylinder cocks and discharge steam upon the boy, the whole implication of the evidence being that he released the steam in a spirit of mischief. We said (p. 581): "though this was done in the course of his employment, he was not within the *scope* of his employment. It was not an act the performance of which at that time and place was shown to be in any way in furtherance of the employer's business, but was done by the engineer on his own account . . . the act being solely a personal one of the engineer, outside the scope of his duty, the railroad company could not be held responsible for damages." So it may be said in this case. It was not a part of Weidner's duty to strike the match, or an act the performance of which was in any way in furtherance of his employer's business, but was done by him on his own account, solely a personal act, outside the scope of his duty and the service to his employer which he was about to perform by signing the receipt. Restatement, Agency, sec. 235, thus sums up the general principle: "An act of a servant is not within the scope of his employment if it is done with no intention to perform it as a part of or incident to a service on account of which he is employed." In *Tshudy v. Hubbs Stores Corp.*, 310 Pa. 285, 165 A. 238, we decided that where the manager of a store raises a knife which he had been using in the course of his work as if to throw it at a customer and the knife slips out of his hand, unintentionally injuring the customer, the action of the employee was his own, not within the scope of his employment and not incident to the authority granted and the employer was not liable to the person injured.

The courts, both in this country and in England, have generally refused recovery in an action against an

employer, where injury was done to the person or property of a third person by a servant smoking, such an act being purely for the servant's own enjoyment and in no way in furtherance of the master's business.

One of the leading English cases is *Williams v. Jones,* 3 Hurlst. & C. 256, 159 Eng. Reprint 528, where a carpenter, employed to work in a shed, after lighting his pipe with a shaving kindled at a match struck by a third person for the purpose of lighting his own pipe, dropped the burning shaving on the floor and caused the destruction of the building. It was held that his master was not liable. In affirming this decision on appeal in 3 Hurlst. & C. 602, 159 Eng. Reprint 668, it was stated (p. 612) : "If it could be said that the act of lighting a pipe of tobacco for the purpose of smoking it was in any way connected with the making of the signboard, which alone Davies was employed by the defendant to do, there would be no difficulty in saying the master would be liable; but we can see no such connection. It was not necessary that he should smoke in order to make the signboard, nor was the act of lighting the pipe in any way whatever for the benefit of his master, or in furtherance of the object of his employment. . . . In order to make the master liable the servant must not only have been negligent in using the shed, but in using it for the purposes of his master and in the course of his employment." Another carefully reasoned case very close on its facts to the one in hand is *Kelly v. Louisiana Oil Refining Co.,* 167 Tenn. 101, 66 S. W. (2d) 997, decided by the Supreme Court of Tennessee in 1934. In that case defendant's servant came to the store where plaintiff was employed, to deliver gasoline. The store contained highly inflammable material and plaintiff's clothing was covered with it. Defendant's servant was using the telephone in the office, calling his employer, and, while doing so, lighted a cigarette and threw the match against plaintiff's clothing, causing it to ignite and severely burning him. In its opinion denying recovery the court

said: "The defendant's servant entered the Brockwell store and took his position at the telephone in furtherance of his service, and, was to that extent acting within the scope of his employment. But the act of lighting the cigarette was not incident to the telephoning and had no relation to it. It did not render the act of telephoning hazardous, nor did it create any causal relation between the service he was employed to render the defendant and the injury sustained by the plaintiff."

A telephone repair man in *Adams v. Southern Bell Telephone & Telegraph Co.*, 295 Fed. 586, who was sent to the home of plaintiff to repair a telephone, while there emptied his pipe over the porch rail. A short time after the house burned down. It was held that defendant was not liable for the negligence alleged, as the repair man was not acting within the scope of his employment. It was decided in *Yore v. Pacific Gas & Elec. Co.*, 99 Cal. App. 81, 277 Pac. 878, that the habit of smoking on the part of defendant's employees engaged in setting electric power poles and their careless tossing of cigarette stumps or burning matches into dry grass or inflammable material where they were working were not acts within the scope of their employment, and that an employer is not liable for damages resulting from fire started by an employee merely to serve his own pleasure or purpose, where the acts have no connection with the duties of his employment. In *Feeney v. Standard Oil Co.*, 58 Cal. App. 587, 209 Pac. 85, the Court of Appeals of California had before it the circumstance that an employee of the oil company spilled gasoline on the cement floor of a garage to which he was delivering it. After completing delivery of the gasoline, the employee waited around for sometime engaging in conversation with others in the building and while so waiting lighted a cigarette and negligently dropped the match into the gasoline on the floor, causing the destruction of the building. The court determined that defendant was not responsible for his servant's negligent act in dropping

the lighted match into the gasoline, because the lighting of the cigarette was no part of the transaction of the defendant's business but an independent act for the employee's personal enjoyment, and, while it occurred during the time of his transaction of defendant's business, it was no part thereof and not in the course of his employment.

In *Morier v. St. Paul, M. & M. Ry. Co.,* 31 Minn. 351, 17 N. W. 952, where workmen on the right of way of a railroad kindled a fire for the purpose of warming their coffee and the fire spread, causing damage, it was held that the railroad company was not liable, because in kindling the fire to warm their meal, the men were not acting in the course of or within the scope of their employment. It was there said, speaking through MITCHELL, J.: "If the servant was, at the time when the injury was inflicted, acting for himself, and as his own master, *pro tempore,* the master is not liable. If the servant step aside from his master's business, *for however short a time,* to do an act not connected with such business, the relation of master and servant is for the time suspended." The facts in that case were duplicated in *Ireton v. Atchison, T. & S. F. Ry. Co.,* 96 Kan. 480, 152 Pac. 625, and the ruling was the same. Another case denying an employer's liability for an injury done to the property of a third person by the act of an employee in smoking is *Heard v. Flannagan,* 10 Vict. L. R. Law 1.

There is a type of cases, such as *Keyser Canning Co. v. Klots Throwing Co.,* 94 W. Va. 346, 118 S. E. 521; *Triplett v. Western Public Service Co.,* 128 Neb. 835, 260 N. W. 387; *Palmer v. Keene Forestry Assn.,* 80 N. H. 68, 112 A. 798, in which liability of an employer was sustained because of evidence which showed that the employer had knowledge of the propensity of his servants to smoke, which habit they were likely to indulge in while at work. The question in these cases was not whether the men in smoking were acting within the scope of their employment but whether the doing

of the act was to be reasonably apprehended by defendants. In the present case the record is devoid of any evidence which would charge the defendant with knowledge that Weidner was in the habit of smoking near or around the intake pipe of the gasoline tank, and, therefore these cases have no application to the controversy.

Another class of cases in which recovery has been allowed are those in which the employee is in possession of an inflammable article, and is controlling it for his employer's benefit. This was the situation presented in *Jefferson v. Derbyshire Farmers, Ltd.* [1921], 2 K. B. 281. There an employee of a garage keeper was drawing motor spirits from a drum into a tin, and, while doing so struck a match to light a cigarette, and then threw it on the floor, causing oil thereon to ignite and consume the garage. The court in that case did not consider whether the act of throwing the lighted match on the floor was within the scope of the servant's employment, but placed liability on the ground that the servant was under an obligation to empty the motor spirits into the tins, and to do so while smoking was not doing it with reasonable care. A similar situation to that in the *Jefferson* case was presented in *Maloney Tank Mfg. Co. v. Mid-Continent Petroleum Corp.,* 49 Fed. (2) 146, where the employee at the time was engaged in demolishing gas tanks, where danger from fire was inherent in the situation if smoking occurred, as the employees knew, and in *Wood v. Saunders,* 228 App. Div. 69, 238 N. Y. S. 571, where an employee of a filling station, while putting gasoline into the automobile of a customer, flipped a lighted cigarette over the open tank and caused the fire.

*Schroeder v. Gulf Refining Co.,* 300 Pa. 397, 150 A. 633, cited by appellant, exhibits facts so different from those at bar that it has no real bearing on the point we are considering. There, the driver of a gasoline tank truck, who supplied plaintiff with gasoline, went into the cellar of plaintiff's house, unscrewed the cap of the

gasoline tank, and ran into it more gallons than were required to fill it, with the result the contents overflowed and ran upon the street. Employees of a telephone company, using a lighted blow torch were in the vicinity, and the fumes from the gasoline in the street reached the blow torch and an explosion followed, destroying plaintiff's property. It was held, under these circumstances, that the driver of the truck, an employee of the defendant, who was in charge of its regular delivery service, was acting within the scope of his employment, as he undoubtedly was, and therefore that his employer was liable. The discussion in that case in many respects supports the position we are now taking, when related to the facts in the pending case. *Allen v. Posternock*, 107 Pa. Superior Ct. 332, 163 A. 336, much relied on by appellee, was a case in which the patron of a beauty shop had inflammable materials placed on her head by an attendant, who lit a cigarette with a match which he waved back and forth to extinguish, in so doing it came in contact with the materials on plaintiff's head, igniting them and burning her. The defendant was held liable, because he was present and did not remonstrate with the attendant and thus made the attendant's act his own. The facts in that case take it completely out of line with the one now before us, because in the pending case the master knew nothing of the servant's act.

A review of all the authorities called to our attention by the briefs and by our own research and a mature consideration of the problem before us has brought conviction to our minds that recovery should not be allowed.

Judgment reversed and entered for defendant.

DISSENTING OPINION BY MR. JUSTICE MAXEY:

I think the verdict of $3,552.75 which plaintiff secured for the burns and other injuries he sustained in defendant's place of business, a place for the manufacture of

paper boxes, should be upheld. I would affirm the judgment of the court below.

Appellant's employee was clearly negligent. As he, in order to sign a delivery receipt, in the course of his employment, approached the appellee, who was filling appellant's tank with gasoline, he, when ten feet from appellee, struck a match to light his cigarette and thereby ignited the gasoline fumes, causing appellee to be burned. I think the principle laid down in Comment (d) to sec. 235 of the Restatement of Agency, supports the position taken by the court below. It reads as follows: "d. Negligent Custody. Although an act is not done for the purposes of the master and hence is not within the scope of the employment, if it is accompanied by authorized conduct, its performance may cause the servant to be negligent in the manner of doing that which is within the scope of the employment. The chief instances occur where the servant is the custodian of land or chattels which he is controlling on account of the master." Then follow two factual situations. In the first, the employer is said to be liable where his servant while delivering gasoline negligently lights a pipe and drops the blazing match in a pool of gasoline on the ground. In the second, liability is denied where the employee, a chauffeur, negligently flicks his lighted cigarette out of the car window into a passing load of hay. The distinction between the two supposititious cases apparently is this: in the first, dropping a lighted match into a pool of gasoline on the ground was a negligent manner of performing the employee's duty of delivering gasoline, whereas the chauffeur's throwing a burning cigarette from the car window, though negligent, had nothing to do with the manner in which he drove his master's automobile and did not amount to a negligent manner of driving.

A leading English case is *Williams v. Jones*, 3 Hurlst. & C. 256, 159 Eng. Reprint 528. There defendant's employee, a carpenter, was making a signboard in plain-

tiff's shed; he attempted to light his pipe from a burning shaving and dropped the shaving on the floor, with the result that the shed caught fire and was destroyed. In an action against the carpenter's employer, the Court of Exchequer denied recovery. The case went to the Court of Appeal, where the judgment was affirmed by a divided court: 3 Hurlst. & C. 602, 159 Eng. Reprint 668. That case was distinguished in *Jefferson et al. v. Derbyshire Farmers, Ltd.* (1921), 2 K. B. 281, in which the Court of Appeal held the master liable for his servant's negligence in striking a match to light a cigarette, while drawing motor spirit from a drum into a tin, and carelessly throwing the lighted match on the floor, upon which oil and gasoline had collected. The ground upon which the Justices based their decision is set forth by BANKES, L. J., at page 286, as follows: "In the present case the negligent act of the boy was in itself a negligent performance of the work he was employed to do. In *Williams v. Jones,* the negligent act of the carpenter was unconnected with the work he was employed to do. The judges in that case did not differ on any question of law, but as to the proper inference to be drawn from the fact that the man lit his pipe while working at a signboard." WARRINGTON, L. J., said, at page 288: "Pouring motor spirit from drums into tins is an operation involving danger from fire unless precautions are taken. There is no doubt or question that the fire was caused by the negligent act of Booth. *It would have been a negligent act to smoke at all in the immediate neighborhood of the spirit* [italics supplied]. Still more was it a negligent act to light a match while the spirit was flowing from the drum. HORRIDGE, J., decided in favor of the defendants on this point on the ground that what the boy did in lighting and throwing away the match was not in the scope of his employment. In one sense it was not; he was not employed to light the match and throw it away; but that is not the way in which to approach the question. It was in the scope of his em-

ployment to fill the tin with motor spirit from the drum. That work required special precautions. The act which caused the damage was an act done while he was engaged in this dangerous operation, and it was an improper act in the circumstances. That is to say, the boy was doing the work of his employers in an improper way and without taking reasonable precautions; and in that case the employers are liable. *Williams v. Jones,* is distinguishable, because the making of a signboard is not in itself a dangerous operation demanding the exercise of any precautions. The act of the carpenter in lighting his pipe had no connection with the work he was engaged to perform. That act was no breach of any duty to exercise due care and caution in the work on which he was engaged, because the work on which he was engaged was not dangerous. But the work on which Booth in the present case was engaged was dangerous, and that makes all the difference."

For a general statement of the English law on the question at hand, see 22 Halsbury's Laws of England (2d ed.), "Master and Servant," sec. 405.

In *Adams et al. v. Southern Bell Telephone & Telegraph Co.,* 295 Fed. 586 (Fourth Circuit Court of Appeals), a telephone lineman was sent by mistake to plaintiffs' home in the country to repair their telephone line. Finding no one at home, the lineman stood a few mo ments on the porch of the house and knocked out the ashes from his pipe on some dead leaves below, whence flames sprang up, destroying the house. The court held that the trial judge did not err in failing to charge the jury that the lineman was acting in the scope of his employment at the time when the alleged act of negligence was committed, since even if he was then in the service of defendant and on duty for it, this in itself would not suffice to impose liability. In discussing *Jefferson et al. v. Derbyshire Farmers, Ltd.,* supra, the court said, at pages 589-590: "The decision was based upon the ground that the task the servant was set to do was in-

herently dangerous. *One who wished it done was bound to see that its obvious perils were guarded against, and therefore the taking of the necessary precautions was within the scope of the task committed to whoever was told to do it* [italics supplied].   There is nothing inherently dangerous in smoking pipes on country porches. It is a use to which many, if not most, of them are habitually put.   To empty the pipes over the porch rail to the ground is common enough, and not ordinarily dangerous, although under some circumstances it may be.   In this case the peril, whatever it was, was not in any wise connected with the work Heeney was sent to do, viz., to find out whether plaintiffs' telephone was out of order, and, if it was, to repair it."

In *Maloney Tank Mfg. Co. v. Mid–Continent Petroleum Corp. et al.,* 49 Fed. (2d) 146, defendant's employee, while engaged in dismantling plaintiff's oil tanks lighted a cigarette and dropped the burning match upon the oil-soaked ground, with a resulting conflagration. In allowing recovery, the court said: "There is a conflict of authority upon the point, but on principle the rule does not seem to be elusive.   Workmen are not employed to smoke, any more than chauffeurs are employed to drive their cars on sidewalks.   Smoking is a pastime of the employee, but one which employers know is a common habit of workmen.   Under ordinary circumstances, it is not an act accompanied with danger to others.   We have no quarrel with cases that decline to hold a master where a servant has stepped aside from his employment and has lighted a cigarette in surroundings where it could not reasonably be anticipated that damage would follow that act: *Adams v. Southern Bell Telephone & Telegraph Co.* (C. C. A. 4), 295 F. 586, 589; *Morier v. St. Paul, M. & M. Ry. Co.,* 31 Minn. 351, 17 N. W. 952, 47 Am. Rep. 793; *Ireton v. Railway Co.,* 96 Kan. 480, 152 Pac. 625, L. R. A. 1917F, 1120.   But the law is otherwise where the master sends out servants to do work, the nature of which is such that the master knows that dam-

age is apt to occur if the servant smokes or strikes a match. In such a case the duty devolves upon the master to see to it that his servants exercise due care under the existing circumstances: *Jefferson v. Derbyshire Farmers, Ltd.* (1921), 2 K. B. 281; *Palmer v. Keene Forestry Assn.,* 80 N. H. 68, 112 A. 798, and note 13 A. L. R. 997. There are cases which do not recognize the master's liability, even where the smoking is done in dangerous surroundings: *Eaton v. Lancaster,* 79 Me. 477, 10 A. 449; *Williams v. Jones,* 3 H. & C. 256, 159 Eng. Reprint 528; *Heard v. Flannagan,* 10 Vict. L. R. Law 1; *Yore v. Pacific Gas & Elec. Co.,* 99 Cal. App. 81, 277 Pac. 878. . . . The work these employees set out to do was inherently dangerous. The tank company knew that the outlet pipes on these oil tanks, some of which it had manufactured a few months before, were above the floor of the tank; it knew there would be a residuum of sediment in the tanks which must be removed and which was highly inflammable. The ground was oil-soaked, as it naturally would be. The appellant, like all employers, knows that workmen are apt to smoke unless restrained. . . . It is our conclusion that where a master undertakes work in inflammable surroundings, he is responsible if his workmen are careless in the use of fire."

The instant case presents an admittedly close question and one which is open in this jurisdiction. It appears to me that sound public policy requires that when servants are employed to do work amid surroundings where lighted matches may result in explosions with consequent injury to other persons near by, the master should be held to the duty of seeing to it that the servants exercise due care. For example, to smoke, or light matches in or near a powder house is to invite disaster. Such being the fact, it is not unreasonable to require that those responsible for the existence and maintenance of a powder house take the utmost precautions that those employed in and about such a house do not

smoke or light matches there. The vapors of gasoline when mixed with air become inflammable. Persons who drive their cars to gasoline stations to be filled are entitled to the law's assurance that those who operate such stations are charged with the care that the employees in and about such stations do not smoke or light matches. To hold an employer responsible for the carelessness of an employee entrusted with responsibility near gas fumes, makes for the employment of careful and well-instructed servants and is therefore a protection to the public. To say to an employer, the law will not hold you responsible for the carelessness of an employee in lighting matches in and about a gas station, is to invite an employer to become careless in the selection of his employees, indifferent in instructing them, and slipshod in his supervision of them. When an employer knows that he will be held responsible for the negligent acts of his employees while on duty, he will have a constant care to reduce such negligent acts to a minimum.

In the instant case, plaintiff was where the performance of his duty required him to be. The employee, Weidner, was grossly careless in lighting a match within ten feet of the place where gasoline in large quantities was being poured into a pipe and where jets of gasoline were "shooting into the air." That Weidner lighted a match as he did reveals not only his own carelessness but also the fact that the degree of discipline and training maintained at this gas station was inadequate. If, for example, it appeared that the destruction of the airship "Hindenburg" had been caused by a member of the crew striking a match as inflammable hydrogen was pouring out of the gas bags, the carelessness of that crew member *and the lack of training and of discipline which that careless act evidenced, would equally merit censure.* In coal mines where explosive gases exist, employees are inspected and searched upon entering the mine, for matches, and if such are found in their possession, the match-carrying employee is discharged.

This extreme care and precaution is not considered excessive to insure the safety of those in and about such mines. Obvious perils must be guarded against by employers. Fire and gas fumes form a dangerous combination. Just as well-regulated railroad companies, in the interest of the public, apply extreme disciplinary measures to prevent employees from using alcoholic beverages, so well-regulated gasoline station operators and paper box factory owners apply effective measures to prevent employees from smoking or using matches while at work. An employer's duty in this respect is not discharged merely by posting signs stating that "smoking is prohibited"; *necessary steps must be taken to make such an order effective.*

I think the case of *Vadyak v. Lehigh & New England R. R. Co.,* 318 Pa. 580, 179 A. 435, cited in the majority opinion, is distinguishable from the case at bar. In that case the employee was guilty of a wicked, wanton act, to wit, discharging steam upon a boy, an act which was *un*foreseeable by the employer and against which it was therefore under no duty to guard against by disciplinary measures. The employer was no more responsible for the engineer's act than it would have been if the engineer had shot the boy. On the other hand, the case at bar was one in which the employer had every reason to take all possible precautionary steps, within reason, to prevent employees from smoking. His place of business was a paper box factory where presumably there was much combustible material and where a large gasoline tank was frequently filled. Knowing the propensity of a large and apparently constantly increasing proportion of human beings to smoke cigarettes, the instant employer was under the duty of foreseeing the possibility of such an accident as did take place and of preventing it as far as it was humanly possible to do so. Most of us have seen places where smoking is liable to cause serious accidents or disasters and we have observed the effective precautions taken by employers in

such places to prevent smoking. Smoking *can* be stopped if employers want to stop it badly enough. Countless proof of that statement can be found in everyday experiences. Smoking *is* stopped in *well regulated* establishments *where it is obvious that smoking is likely to lead to disastrous consequences.*

I do not think that placing on employers the responsibility of absolutely preventing smoking in such establishments is an unreasonable burden. The safety of the public is the prime consideration of the state. For example, railroad companies and coal mining companies and factory owners have been required by law to adopt at great expense to themselves every approved device reasonably adapted to the protection of human life and human health. To hold that the mere posting of signs, "No Smoking," in establishments where the disastrous results of smoking are as foreseeable as they were in the instant case, is to invite the laxity of discipline and supervision which evidently prevailed in defendant's place of business and which led directly to plaintiff's injuries. The duty of using diligence to avoid causing injury to others is breached by any legally harmful act or omission *which might have been foreseen* and whose evil consequences *might have been avoided* by taking proper precautionary measures.

The case of *Allen v. Posternock,* 107 Pa. Superior Ct. 332, is well cited as an authority by the appellee here. There the Superior Court said: "Notwithstanding the instructions alleged to have been given by defendant to her employee, Gibson [not to smoke], *it was her duty to see that the same were carried out* [italics supplied]." The Superior Court thus clearly recognized the principle that an employer does not discharge his full duty in *instructing* employees not to smoke on premises where smoking is reasonably likely to lead to harmful consequences but that the duty is discharged *only* when the employer *sees to it that the instructions are obeyed.* Proper *supervision* and *discipline* will secure obedience.

The social value of a rule which holds an employer responsible in a case like the one now before us is obvious and incontestable. Mr. Justice CARDOZO has aptly said in "The Nature of the Judicial Process": (p. 73) "Today in every department of the law the social value of a rule has become a test of growing power and importance." (p. 67) "When judges are called upon to say how far existing rules are to be extended or restricted, they must let the welfare of society fix the path, its direction and its distance."

Since an affirmation of the judgment of the court below does not require a departure from any established principle or a reversal of any of our former decisions and as, according to my view, the social concept underlying that judgment makes for the welfare of society, I would affirm it.

DISSENTING OPINION BY MR. JUSTICE DREW:

It is said by the majority that smoking was not within the scope of the servant's employment; that striking the match to light the cigarette was a purely personal act, unauthorized and forbidden, for which reason defendant cannot be liable for its servant's negligence. It is true that the servant was not employed to smoke and that smoking was not within the scope of his employment. Nonetheless, his act of lighting the match made negligent the performance of what was clearly within the scope of his employment, namely, going to the place where gaseous vapors had been released to sign the receipt. The case would be quite different had the servant gone there for some purpose of his own. His going to the place was as much a part of his duty as signing the receipt after he got there. He had on numerous occasions in the past gone to the truck for the same purpose. This being true, it follows that it was a part of his duty to use due care under the circumstances. His failure to do so was nothing less than a negligent per-

formance of the duty in which he was then engaged—
going to that place to sign the receipt.

The inquiry here, therefore, is simply whether in the
doing of an act within the scope of his employment the
servant performed it negligently. It makes no differ-
ence that the performance of the act was made negligent
by his smoking, which itself was not within the line of
duty: *Jefferson v. Derbyshire Farmers, Ltd.* [1921], 2
K. B. 281; *Maloney Tank Mfg. Co. v. Mid–Continent
Petroleum Corp.,* 49 Fed. (2d) 146; *Wood v. Saunders,*
228 App. Div. (N. Y.) 69, 238 N. Y. S. 571; *Triplett v.
Western Pub. Service Co.,* 128 Neb. 835, 260 N. W. 387;
see *Williams v. Jones,* 3 H. & C. 602, 159 Eng. Rep. 668
(1865); *Palmer v. Keene Forestry Assn.,* 80 N. H. 68,
112 Atl. 798; *Keyser Canning Co. v. Klots Throwing
Co.,* 94 W. Va. 346, 118 S. E. 521; Restatement of
Agency, section 235, comment (d).

The English authorities impose liability in a case
such as this. In *Jefferson v. Derbyshire Farmers, Ltd.,*
supra, the defendant's employee lighted a cigarette while
drawing gasoline from a tank. Defendant was held
liable for damage done by the resultant fire on the
ground that its employee failed to take due precaution
in the performance of the authorized act of drawing the
gasoline. BANKS, L. J., at page 286, expressed this posi-
tion as follows, "It is not disputed that it was in the
scope of Booth's employment to empty motor spirit from
drums into tins and to do that in the garage. That act
being by its nature within the scope of his employment,
it was his duty to do that part of his work with reason-
able care. To smoke and throw a lighted match on the
floor while doing this work was not to do the work with
reasonable care, and therefore a cause of action was es-
tablished. . . ." ATKIN, L. J., voiced substantially the
same view, "It is irrelevant to consider whether he was
authorized by his employers to smoke. He was author-
ized to draw the benzol, and he was doing that act neg-
ligently. . . ." (page 289).

The case of *Williams v. Jones,* supra, was distinguished in the *Jefferson* case so narrowly as to seriously impair whatever authority the majority opinion may theretofore have had. It held not liable the employer of a servant who in lighting his pipe set fire to shavings on the floor of the plaintiff's carpenter shop in which he was working for defendant. The action was for negligent destruction of the shop. BLACKBURN, J., one of the greatest common law judges who ever sat on the English bench, dissented with MELLOR, J., from three other judges in the Exchequer Chamber and analyzed the problem as follows, "It is said that Davies, the servant, was not employed by his master to smoke or to light his pipe, and that is no doubt true; but the act of lighting a pipe was in itself a harmless act; it only became negligent and a breach of duty towards the plaintiff because it was done when using his shed and working there amongst inflammable materials. . . . It seems to me, therefore, that it was negligence in the course of his employment, such as to be in law the negligence of his master, the defendant."

*Maloney Tank Co. v. Mid–Continent Petroleum Corp.,* supra, lends further support to the view taken here. There defendant's employees were engaged in dismantling oil tanks when one of them lighted a cigarette and dropped the match upon the oil-soaked ground. For damage done by the fire thus kindled defendant was held liable. In *Wood v. Saunders,* supra, an employee at a gasoline filling station caused a fire by his negligent smoking. The employer was likewise held responsible for his tort. In *Triplett v. Western Public Service Co.,* supra, defendant's employees were constructing an electric line over fields covered with dead grass. Through the employees' smoking the grass was ignited, causing the damage for which defendant was held liable. Liability was imposed on the ground that the accident was the result of the negligent performance of the employer's work, for which it was responsible under the doctrine of

*respondeat superior.* This case cannot be put aside, as the majority opinion does, on the ground that liability there rested alone on the fact that defendant knew or ought to have known of the practice of its employees to smoke, and was, consequently, negligent itself in the first instance.

It is to be noted in all the cases reviewed that the act of smoking combined with a condition of the employment to cause the damage done. In two the employee was working directly over gasoline, in another over shavings he had made in the course of his work, in a fourth over oil-soaked ground, and in that remaining the work was being done in a similarly hazardous environment. In each the condition of the employment was such as to require especial precaution against fire and explosion. As pointed out by BLACKBURN, J., in *Williams v. Jones,* supra, it is not the smoking alone that causes damage but rather the risk which has constantly lurked in the employment and which the smoking merely brings into operation. The employees' use of fire in those cases was only a failure to take the precautions the conditions of the employment required. Similarly here, the employee failed to take the precautions he ought to have taken in doing his master's work, and that made the master liable for his negligence.

*Jefferson v. Derbyshire Farmers, Ltd.,* supra; *Maloney Tank Mfg. Co. v. Petroleum Corp.,* supra, and *Wood v. Saunders,* supra, are distinguished in the majority opinion as cases "in which the employee is in possession of an inflammable article, and is controlling it for his employer's benefit." The distinction seems wholly artificial and also insufficient to dispose of the *Maloney* case where the inflammable material was oil-soaked ground of which the employees surely had not possession. Moreover, the court that decided the case was not concerned with possession, but stated rather, "It is our conclusion that where a master undertakes work in inflammable surroundings, he is responsible if

his workmen are careless in the use of fire." There seems to me no logical reason why the employer should be liable when the employee has possession of the inflammable material and not liable when the employee is equally careless in doing his authorized work in the presence of a combustible substance of which he does not have possession.

To be sharply distinguished, however, are the cases cited in the majority opinion where it is not the employment or any condition of it that gives rise to the hazard of fire: *Adams v. Southern Bell Telephone & Telegraph Co.*, 295 Fed. 586; *Kelly v. Louisiana Oil Refining Co.*, 167 Tenn. 101, 66 S. W. (2d) 997; *Ireton v. Atchison, T. & S. F. Ry. Co.*, 96 Kan. 480, 152 Pac. 625; *Morier v. St. Paul, M. & M. Ry. Co.*, 31 Minn. 351, 17 N. W. 952. In *Adams v. Telephone Co.*, supra, defendant's employee stopped at a house to make telephone repairs. Because no one was at home, he waited on the porch for the owner's return, meanwhile smoking his pipe, hot ashes from which he dumped into dry grass near the porch. A fire was started and the house burned down. The employer was held not responsible for the tort. Plainly no act done for the employer, nor any condition of the employment, required particular precaution as regards a fire hazard. The court recognized this fact when it said, "There is nothing inherently dangerous in smoking on country porches. It is a use to which many, if not most, of them are habitually put." In *Ireton v. Ry. Co.*, supra, and *Morier v. Ry.*, supra, railroad section hands lighted fires to warm their lunch. The fires spread, causing damage for which the defendants were held not liable. In these cases the employees were doing nothing whatever for their employers and so, of course, their conduct was not tantamount to doing their work negligently. In *Kelly v. Louisiana Oil Refining Co.*, supra, defendant's employee while telephoning defendant threw a cigarette butt against the plaintiff's clothing. For the resultant injuries defendant was held not liable. Here again no

act done for the employer, nor any condition of the employment, required precautions against the risk of fire. In the words of the court that decided the case, the act of smoking ". . . did not render the act of telephoning hazardous. . . ." The case marks the limit of the principle I deem controlling here. The scope of its application is stated and illustrated in section 235, comment (d), Restatement of Agency, "Although an act is not done for the purposes of the master and hence is not within the scope of the employment, if it is accompanied by authorized conduct its performance may cause the servant to be negligent in the manner of doing that which is within the scope of the employment. . . ." There follow two illustrations. In the first the employer is said to be liable where his servant while delivering gasoline negligently lights a pipe and drops the blazing match in a pool of gasoline on the ground. In the second liability is denied where the employee, a chauffeur, negligently throws his lighted cigarette out of the window into a passing load of hay. The distinction is apparent. In the first case, dropping the match was a negligent manner of performing the employee's duty of delivering the gasoline, whereas the chauffeur's throwing the cigarette, though negligent, did not amount to negligent driving. In the instant case striking the match was a negligent manner of performing the duty to go to the truck to sign the receipt.

The majority opinion cites cases from two jurisdictions that decline to hold the employer liable when the employment itself is the source of the danger in smoking: *Feeney v. Standard Oil Co.*, 58 Cal. App. 587, 209 Pac. 85; *Yore v. Pacific Gas and Electric Co.*, 99 Cal. App. 81, 277 Pac. 878; *Heard v. Flannagan*, 10 Vict. L. R. Law 1. In the *Feeney* case the defendant's employee spilled gasoline while delivering it. Shortly afterward he lighted a cigarette and dropped the glowing match into this gasoline lying on the floor. An action was brought for the damage caused. Relying upon

a section of the California Civil Code, without discussion of any authority, the court briefly holds the employer not liable for the employee's negligence through smoking, but goes on in an extended and thorough opinion to sustain recovery on the ground that the employee was negligent in the performance of his work for not having mopped up the gasoline he had spilled. In the *Yore* case, also a California case, defendant's workmen by throwing away lighted cigarettes ignited dried grass over which they were working constructing an electric power line. The *Feeney* case was relied upon; other cases were cited without analysis; the defendant was held not liable. In *Heard v. Flannagan,* defendant's employee was working on a haystack. After smoking he put his hot pipe into a pocket of his coat in which there were matches, laying the coat upon the stack. The matches were apparently ignited by the heat of the pipe, causing the damage for which defendant was held not liable in an opinion, the law of which is contained in one sentence without citation of a single authority: "The master is not liable for the acts of his servant which he never directly or indirectly authorized." These few cases from California and Australia represent a distinct minority in the law on the subject.

Two cases from our own jurisdiction, relied upon in the majority opinion, require passing notice: *Vadyak v. Lehigh & New England R. R. Co.,* 318 Pa. 580; *Tshudy v. Hubbs Stores Corp.,* 310 Pa. 285. In the former a locomotive engineer, for the purpose of frightening boys standing near the tracks, released steam from the cylinders. Blinded by the vapors, one of them stumbled and fell beneath the wheels. The court pointed out that the engineer "wilfully and wantonly discharged steam," that it was not necessary to do so at the time, and that "the whole implication of the evidence is that he released the steam upon the child in a spirit of mischief. . . ." The defendant was held not liable. In the latter, *Tshudy v. Hubbs Stores Corp.,* defendant's em-

ployee, a grocery store manager, "made a motion to throw" a knife at the plaintiff. The knife slipped from the employee's hand and injured plaintiff. Defendant was held not liable. Neither of these cases involve the negligent performance of the employer's business. In each the conduct of the employee was *wilfully directed toward the plaintiff,* although the consequences were unintended. The cases fall within the familiar rule that a master is not ordinarily liable for the wilful misconduct of his servant, and are, it seems to me, so dissimilar to the instant case as to be of no help in deciding it.

In brief, the servant was authorized to go to the truck to give a receipt; he attempted to do this without exercising the care required by the circumstances, and was thus negligent in the course of his employment; for this reason the master is responsible.

I would affirm the action of the court below in entering judgment on the verdict.