EARL F. TRIPLETT, APPELLEE, V. WESTERN PUBLIC SERVICE COMPANY: HENNINGSON ENGINEERING COMPANY, APPELLANT.

FILED APRIL 26, 1935. No. 29221.

*Kennedy, Holland & De Lacy, Evans & Doyle* and *Ralph E. Svoboda,* for appellant.

*Hamer & Tye, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY, PAINE and CARTER, JJ.

Paine, J.

This is a negligence action, brought by a Thomas county ranchman for damages caused by a prairie fire alleged to have been started from matches or cigarettes used by defendant's employees.

Earl F. Triplett brought an action against the Western Public Service Company and the Henningson Engineering Company for damages caused by a prairie fire, which started about noon March 9, 1930, and burned over 500 acres of plaintiff's valuable hay land. Plaintiff alleged that such fire greatly reduced the fertility of the land, so that it produced no hay during the years 1930 or 1931, as the roots of the natural grass growing thereon were ruined by said fire, and the soil, which is of a light, sandy nature, without the protection of the grass which had been burned off, became loose and shifting, and large blowouts and sand-pits formed, causing injury to the land itself; that, in addition, the fire burned 60 tons of hay which had been cut and bunched on said land.

Plaintiff alleged that the Henningson Engineering Company hired a large number of men, and that said men and their superintendent and foreman were addicted to smoking while engaged in the work, such fact being well known to the defendant and its officers; that the grass on said land was parched, dry, and highly inflammable, where fires were easily started and difficult to control or extinguish; that while so engaged in constructing the transmission line, employees of the Henningson Engineering Company carelessly and negligently threw burning matches and cigarettes into the dry grass and weeds, setting a fire which spread over the entire tract owned by the plaintiff, and plaintiff asked damages in the sum of $2,100.

The Henningson Engineering Company alleged that its principal place of business was in Omaha; that it had no agent in Thomas county, and that it was not jointly liable with the codefendant, Western Public Service Company, but was an independent contractor, constructing a certain transmission line between Seneca and Dunning for the

Western Public Service Company, and that its employees were not engaged in any business in the vicinity of the alleged fire at the time it started, and if any of its employees did smoke cigarettes or cast matches in dry grass, said employees were not at that time in the discharge of their duties for the defendant, and that any such action was outside of the course and scope of their employment, and that when their employees saw the fire they proceeded to the fire and endeavored to put it out, and being unable to do so went to the nearest town and summoned help, and that the employees thereupon engaged in resisting the common peril, and within two hours had put out the original fire; that the original fire was not over the land of plaintiff, but that the fire which burned over his land was started by some unknown person as a backfire. Defendant asks that the petition be dismissed. The trial court dismissed the cause as to the Western Public Service Company upon motion, and the jury returned a verdict against the Henningson Engineering Company in the sum of $807.34.

The defendant presents as its first error of law the jurisdictional objection raised by its special appearance and demurrer, and also in the answer, that it was not suable in Thomas county, Nebraska. The trial court overruled the contention of the defendant, holding that under section 20-401, Comp. St. 1929, actions to recover damages for any injury to real estate shall be brought only in the county where such real estate is situated, and that the early cases cited by the defendant, *Delaney v. Errickson,* 10 Neb. 492, and *Burlington & M. R. R. Co. v. Beebe,* 14 Neb. 463, were decided prior to the enactment by the legislature of this section of the statute in 1889. A portion of this section of the statute was found in the Laws of 1866, but the first seven lines of such section, relied upon by the plaintiff, were added by an amendment, chapter 29, Laws 1889.

Our court had before it a case involving this section of the statute in *Jacobson v. Lynn,* 54 Neb. 794, and while

the case seems never to have been cited by our court it appears to be quite in point. The records in this court show that Lynn filed a bill of particulars in justice court in Knox county to recover $150 damages for defendant's cattle trespassing upon and destroying hay on the northeast quarter of section 4-29-1 in Cedar county, Nebraska, belonging to the plaintiff. Motion was filed .to dismiss the action because the court had no jurisdiction. Motion was overruled, and the jury rendered a verdict for $35 and costs. The defendant appealed to the district court. In the petition filed in the district court, the plaintiff asked damages for the destruction by the defendant's cattle of 75 acres of grass and three tons of hay on his Cedar county land. Defendant filed motion to dismiss for want of jurisdiction in the district court, which was overruled, and a trial resulted in a verdict of $1 and costs, and the defendant brought the case to this court. The court held that the language of the section of the statute now known as section 20-401, Comp. St. 1929, was so plain, direct, and unambiguous as not to require any judicial interpretation, and held that an action to recover damages for trespass upon real estate can be brought alone in the county where the lands are situated, and that such action is not transitory, and the courts of one county have no jurisdiction to hear, try and determine a suit to recover damages to real estate located in another county, or else the statute cited is meaningless. We are entirely unable to see any distinction between this case, where a man's land was damaged by cattle trespassing thereon, and the case at bar, where plaintiff's land was damaged by a prairie fire alleged to be negligently started, and in our opinion the trial court was right in the instant case in holding said defendant to answer for injury to the land itself, which action can be brought only in the county where such real estate is situated; and it was contended in the argument that no special objection was made to joining the claim for personal property damage to the claim for permanent damage to the land.

However, the trial court in instruction No. 14 limited the measure of plaintiff's recovery to the difference between the fair market value of the land which the jury found was injured by fire, immediately before and immediately after the fire.

The defendant urges as a further error the admission of the testimony of the alleged conversation between the witness Crawford and an employee, Rasmussen, as admission with reference to the cause of the fire, it being the defendant's claim that, if this evidence had been excluded by the court, plaintiff would have had no proof of the connection of the Henningson Engineering Company with the fire. It appears in the evidence that John Crawford, a ranchman, owning 1,114 acres, living about three miles from the plaintiff's land, had been out fighting this prairie fire, and testified that the fire originated within three feet of the transmission line being built by the defendant company. That Fritz Rasmussen, a foreman of a pole gang for defendant company, came to his place during the course of the fire, and in a conversation between Crawford and Rasmussen the origin of the fire was touched upon. At the trial question No. 599 was asked Crawford, reading as follows: "Anything said as to the origin of the fire, as to how it started? A. He said one of the boys had started a fire." No objection was made by the defendant's counsel to this particular question, and no motion was made to strike out the answer. There is also evidence that a pair of climbers was found at the foot of a pole near where the fire started.

A witness, Clint Hardy, upon whose land the fire originated, testified that he had no range riders, and that nobody in his employ was about there that day. Q. 392: "How far was the transmission line at the point where this fire burned from any road? A. Well, better than half a mile." He then said there was no fire between the public road and the transmission line.

Witness Hardy also testified that he was engaged by Foreman Rasmussen, and worked on this line the day

before the fire; that four men were working with him; that these employees started three fires that day, which they extinguished; that at that time he told these men that without a doubt they would burn the country off if they were not more careful with their smoking, and that the foreman himself smoked that day.

There was some evidence as to why defendant's employees were near the place where the fire started Sunday, and Hardy testified that the day he was working there he heard "Boss" Martz say to the foreman of the wire gang, Rasmussen, "Send the crew back through here in the morning and slack this line eight inches," but that the witness, Hardy, did not work with them on Sunday.

F. A. Martz was a construction foreman and had charge of the 15 or 18 men working on this transmission line. He testified that Rasmussen was top foreman of one crew. Mr. Martz testified that, when he came up to Thomas county about a month in advance and made an inspection with another engineer on the Halsey government forest reserve, Mr. Thompson cautioned them against smoking; that later, when the crews came to start work, instructions were issued by Mr. Henningson that the men must be kept from smoking while on duty. Mr. Martz testified that he was a moderate smoker, but that he never observed any men smoking on the job.

Gragg and Utter were the two men doing the work Sunday morning. Gragg denied that either of them were smoking that Sunday morning, and testified on cross-examination that when he first saw the fire it was about a block from where they were, and at that time was about 75 feet wide and 200 feet long, and that he saw nobody else around, and no one else had gone through; that when they first saw it they got right in their Ford truck and drove to town and told Rasmussen, their boss, and a lot of men got in the truck and they all drove right back to fight the fire; that when they got back the fire was a mile long.

The jury found for the plaintiff on the disputed ques-

tions of fact. There is sufficient evidence to justify the jury in finding that these two employees were smoking on Sunday, as they were on Saturday, and carelessly started this fire, the same as they started three fires Saturday, especially as no one else was in this inclosed pasture at the time, and they admit they were close to it in point of distance when it started. Their acts in immediately rushing back to town and reporting to their foreman, and returning to this fire they had discovered, accompanied by the foreman and other employees, and all then fighting it for hours, were doubtless some of the evidence leading to the verdict.

The defendant argues strongly that in Nebraska a master is never liable for the acts of a servant committed outside the scope of his employment; if a servant steps aside from his master's duties for even a moment to do an act entirely personal to himself, or for his own pleasure, the relation of master and servant is then suspended, and the master is not liable. Defendant cites, in support thereof, *Clancy v. Barker*, 71 Neb. 91, in which case a six-year-old son of a hotel guest wandered into the room of a hotel where a waiter was playing a harmonica, and in play he pointed a revolver at the boy, and it was accidentally discharged, destroying the sight of one of his eyes. It was held that the master is not liable for the torts of his servant unless connected with his duties and within the scope of his employment. However, we are unable to find any case in Nebraska involving similar facts to the case at bar.

*Palmer v. Keene Forestry Ass'n,* 80 N. H. 68, 13 A. L. R. 995, is a case where the defendant was employed to set out trees in a field, and one of his laborers carelessly dropped into the dry grass a lighted match, by reason of which the fire spread over the field, burned the trees, and destroyed the plaintiff's buildings. The defendant's position was that there was no evidence showing that the defendant had knowledge that this laborer was addicted to the use of cigarettes. The evidence tended to show that

some of the men, including the foreman, smoked while doing their work, and that they were not forbidden to smoke while at work, and that the jury would be justified in finding that the defendant ought to have known of this habit of its workmen. It would follow that the defendant would be chargeable with the knowledge that ordinarily prudent men would possess upon this subject, and ought to have provided, by instruction or otherwise, against the practice of the habit when it was liable to result in serious damage to third persons. It was argued that the men were not engaged in defendant's business when the fire was set; that smoking was no part of the work they were hired to do, and hence the defendant was not liable. It is held that the question is not whether the men, in dropping lighted matches into the grass, were acting within the scope of their authority, but whether the doing of the act was reasonably to be apprehended by the defendant.

In *Jefferson v. Derbyshire Farmers, Ltd.* (1921) 2 K. B. 281, 13 A. L. R. 989, being in the English court of appeal, a young man employed by the defendants in a garage in Ashbourne, in the county of Derby, while drawing a two-gallon tin of benzol from a 50-gallon drum, turned on the tap, and while it was running he lighted a cigarette and threw the match on the floor. A fire started in a flash, and no one could get near enough to turn off the tap, and the garage burned down. It was held that the employee, being engaged in an act which was within the scope of his employment, having failed to exercise caution, was guilty of negligence in the course of his employment, and the defendants were held liable for the resulting damage. It was said that a master is liable for the act of his servant in the course of his employment if the act is negligent. While in this case it seems to be the theory of the court that the act of the servant in continuing to draw the explosive in the presence of fire, rather than his act in throwing down the lighted match, was regarded as the proximate cause of the injury, it appears that this distinction is rather far-fetched, and that to all

intents and purposes the effect of the holding is that if, while the explosive was running out to fill the two-gallon can, the employee threw down a lighted match, which caused the fire that burned the garage, he was so negligent that his employer was responsible therefor.

In *Keyser Canning Co. v. Klots Throwing Co.*, 94 W. Va. 346, 31 A. L. R. 283, a silk manufacturing company conducted its business in a wooden building, amid highly inflammable surroundings. A young man in its employ was known to be a smoker of cigarettes, and had been frequently warned against smoking upon its premises. He was permitted to sleep at night in the premises, notwithstanding the company had knowledge that he was continuing his habit of smoking and was disobedient to the instructions. A fire started when this employee negligently threw a lighted cigarette stub into a waste-basket. The fire spread and destroyed a neighbor's property. It was held that the silk manufacturing company was responsible for the loss of the property. This case goes much farther than we are asked to go in the case at bar, for the fire occurred during the nighttime, during the hours when the young man was not employed.

There is an English case, *Williams v. Jones,* 159 Eng. Reprint, 668, decided in the Exchequer Chamber February 7, 1865, which is the earliest case we have found involving a fire negligently started by smoking. The facts are that the plaintiff, having sold some boards to the defendant, lent him the use, free of cost, of one of three sheds, in which to have the boards made into a signboard. The defendant employed a carpenter named Davies to do the job. While Davies was at work on the signboard, a stranger came in, filled his pipe with tobacco, and at the request of Davies gave him sufficient tobacco to fill his pipe also. The stranger then struck a match, with which he lighted his own pipe, and Davies, having lighted a shaving at the flame of the match, after lighting his pipe with it let it fall negligently, and in endeavoring to kick away the shaving other shavings were ignited, and the three sheds

of the plaintiff were all burned. The jury found that the fire was caused by the negligence of the defendant's servant, and gave a verdict for plaintiff for the value of the three sheds. Judges Keating, Erle and Smith held that the defendant was not liable because the act of lighting the pipe was in no way connected with the making of the signboard, which alone Davies was employed to do. It was said in this opinion that if, instead of bringing into the shed tobacco and matches, the stranger had brought in squibs (firecrackers), and they had diverted themselves with setting off the squibs, and fire followed, it could not be said that the master would be liable as being an act done in the course of employment. It is stated that, had the defendant known that Davies was in the habit of smoking on such occasions and took no precautions against his doing so in the plaintiff's shed, he might perhaps have been made liable in another form, but that there was no evidence of anything of the sort. Two of the judges took the contrary view. Mellor, J., said that the making of the signboard and the use of the shed could not be disconnected, and that permission given to use the shed, and negligence in the use thereof, appeared to him to fall strictly within the course of Davies' employment, and that therefore the defendant was liable. Blackburn, J., said that the general rule of law was clear that, where the relation of master and servant existed, the master was responsible for the consequences of any negligence of his servants in the course of the employment, although the master was not a party to such negligence, and even did his best to prevent it; as, for instance, where the master, selecting a coachman believed to be sober, sends him out with orders to drive quietly, and the coachman gets drunk and drives furiously. "In such a case it may seem hard that the master should be responsible, yet he no doubt is if he be his master within the definition stated by Parke, B., in *Quarman v. Burnett* (6 M. & W. 499, 509), that the person is liable 'who stood in the relation of master to the wrong-doer—he who had selected him as his

servant, from the knowledge of or belief in his skill and care, and who could remove him for misconduct, and whose orders he was bound to receive and obey.'" Blackburn, J., concluded that the negligence of Davies was negligence in the course of his employment, such as to be in law the negligence of his master, the defendant.

In *Gilman v. Eastern R. Co.*, 13 Allen (Mass.) 433, 90 Am. Dec. 210, the railroad company employed as flagman a man who was an habitual drunkard, which fact was known to the officers of the company, or by due care might have been known, and while so intoxicated he misplaced a switch, whereby another employee was injured, and it was held that the railroad company must pay the damages returned by the jury.

In our opinion a statement of the law covering the case at bar was set out by instruction No. 12 given by the trial judge. We condense and abridge this into the following statement: It is clear that the smoking of cigarettes was in no way incident to or any part of the employment of the agents and employees of the defendant corporation; that before the defendant could be held liable for the wrongful act of any of said employees, the jury must find that smoking at the place in question was dangerous, and that fire might be ignited by throwing matches or cigarettes in dry grass; that the employees of the defendant were in the habit of smoking while engaged in their duties, which fact was known to the defendant; that, having knowledge thereof, the defendant corporation carelessly and negligently suffered and permitted this dangerous practice to continue, and took no adequate steps to abate the same, and that by reason thereof the fire in question occurred.

It is a general rule, supported by many cases, that the retention in employment of a servant known to be habitually negligent is negligence on the part of the master which will render him liable for injuries to third persons resulting from the acts of the incompetent servant, whether the master's knowledge of such incompetency is actual

or constructive. 39 C. J. 1267. It has also been held that, to charge a master with liability for unauthorized acts of his servant, it must be shown that he had either actual notice thereof or that such acts were committed so frequently and under such circumstances as to justify the presumption of notice (39 C. J. 1265), but in the case at bar there is some evidence to show that the foreman in charge of these men was not only well acquainted with their habits, but that he himself smoked cigarettes, and the knowledge of this foreman would be the knowledge of the master.

Perhaps the best discussion of the recent trend of opinion is found in *Maloney Tank Mfg. Co. v. Mid-Continent Petroleum Corporation,* 49 Fed. (2d) 146. The tank company was employed to dismantle a battery of oil tanks near Seminole, Oklahoma, and one of the workmen stopped in his work to light a cigarette, and threw the match on the oil-soaked ground. An insurance company paid $18,371.38 to apply on the loss, and sued the tank company. McDermott, Circuit Judge, discusses many cases, and said:

"Appellant next contends that, even if the workman was its servant, the lighting of a cigarette was not an act done in the course of his employment. * * * There is a conflict of authority upon the point, but on principle the rule does not seem to be elusive. Workmen are not employed to smoke any more than chauffeurs are employed to drive cars on sidewalks. Smoking is a pastime of the employee. * * * We have no quarrel with cases that decline to hold a master where a servant has stepped aside from his employment and has lighted a cigarette in surroundings where it could not reasonably be anticipated that damage would follow that act. * * * But the law is otherwise where the master sends out servants to do work, the nature of which is such that the master knows that damage is apt to occur if the servant smokes or strikes a match. In such a case the duty devolves upon the master to see to it that his servants exercise due care under the existing circumstances."

The evidence in the instant case, although in sharp dispute on some points, would justify the following statement of facts and of the law in relation thereto: That the defendant's employees caused the fire by carelessness and negligence in handling cigarettes and matches while smoking; that they were in this pasture at the time, performing work under the instructions of the foreman; that if they had not been in the defendant's employ and on its business, they would not have been at the place at which the alleged wrongful act occurred; that the defendant company had knowledge of the habits of such employees to use cigarettes while engaged on the job; that it had knowledge that such use of cigarettes while working across this pasture land of dried and parched grass was inherently dangerous and might result in starting prairie fires which would cause great damage to ranchmen in that neighborhood; that there was no abandonment of the defendant's business while the employee was thus smoking, but the employee merely combined the defendant's business with the employee's private pleasure of smoking; that such smoking was in violation of the defendant's orders, but under all the facts and circumstances it constituted a negligent act performed by the employee, while doing his work in an irregular way, for which wrongful and negligent act the defendant should be required to respond to the plaintiff suffering damages thereby. *Rish v. Iowa Portland Cement Co.,* 186 Ia. 443; *Wood v. Saunders,* 238 N. Y. Supp. 571; *Jones v. Weigand,* 119 N. Y. Supp. 441; *Fields, Inc., v. Evans,* 36 Ohio App. 153; Mich. Law Review, March, 1931, p. 640; *Boatright v. Steinite Radio Corporation,* 46 Fed. (2d) 385.

We have examined all of the errors set out in the brief for reversal, but, having given such an extensive review of the authorities on this interesting question, which comes to this court for the first time, we must simply be content with saying that we find no prejudicial errors in the judgment entered on the verdict, and the same is hereby

AFFIRMED.