VINCENNES STEEL CORPORATION *v.* GIBSON.

4-4650

Opinion delivered May 17, 1937.

*Seymour Riddle, Joe D. Shepherd* and *J. M. Smallwood,* for appellant.

*Caudle & White,* for appellees.

MEHAFFY, J. John W. Gibson and C. H. Gibson, Lester Perschall, Paul Stormant, J. J. Martin, W. G.

Wipperman and August Dorn instituted separate actions in the Pope circuit court against the appellant for damages to property occasioned by fire. The allegation as to negligence is the same in all the cases. It was alleged that on or about September 7, 1936, the appellant, a corporation organized and authorized to do business in Arkansas, by and through its agents, servants and employees, was engaged in building a bridge with dirt approaches thereto, and across what is known as Illinois River, in Pope county, Arkansas, and was engaged in gathering rock from the lands owned by appellees and on said date, while the appellant, agents, servants and employees were engaged, and while acting within the scope of their employment, and in the performance of their duty, negligently and carelessly ignited and set fire to and permitted to be ignited and set fire to the grass, weeds, trash, timber and debris on lands owned by the appellees, and negligently and carelessly caused and permitted said fire to get beyond the control of appellant, its agents, servants and employees, and caused or permitted said fire to burn across the premises owned by the appellees, burning and destroying meadows, timber and vegetation therefrom, and by burning over said lands, destroying the property described in appellees' complaints. Each complaint described the property claimed to be damaged, and alleged that the property was destroyed by the negligence of appellant, its agents, servants and employees.

The Gibsons sued for $1,000. The other appellees sued for different amounts in damages. Appellant demurred to each of the complaints, which demurrers were overruled, and appellant thereupon filed answers denying all the allegations of the complaints. The cases were then consolidated for trial, and there was a verdict and judgment in the case of Gibsons against the appellant for $500. There was a verdict and judgment in favor of each of the other appellees for different amounts. Motion for new trial was filed and overruled, and the cases are here on appeal.

The appellant insists on reversal first, on the ground that if the fire was set out by one of its employees, said

employee was not acting at the time within the scope of his employment, and second, that appellant was not guilty of negligence in permitting the fire to get beyond the control of said appellant, its agents, servants and employees.

The undisputed facts show that appellant, through its employees, was getting rock from the land of appellees, and the appellant, in its brief, states: "In conclusion, appellant earnestly insists that all of the proof introduced shows conclusively that the fire was started by one of its employees' lighting a cigarette. That the lighting of the cigarette was not in the prosecution of the master's business, and that the employee had departed from the prosecution of the master's business and was accomplishing his own personal desires, solely for his own personal satisfaction."

The fire having been set out by one of the employees, the question is whether the master was relieved from liability because this act of the employee was not within the scope of his employment. To support its contention, appellant first calls attention to *Rex Oil Corporation* v. *Crank,* 183 Ark. 819, 38 S. W. (2d) 1093. In that case we said: "It is the law of this jurisdiction, as settled in numerous decisions, that the master is responsible for the negligent act of his servant, if such act occurs during the time the servant is engaged in the service of the master, although the act itself might have been unauthorized; but it is essential to the master's liability that the wrong complained of must have been occasioned by the negligent conduct of the servant who, at the time, was acting within the scope of his employment."

The court further said, in discussing this question: "The difficulty lies in the application thereof, as there is no definite rule by which it can be said that the acts of a servant are within or without the scope of his employment, each case of necessity depending upon its own peculiar facts and circumstances."

All the authorities hold that if the servant commits an act during the time the servant is engaged in the service of the master, although the act itself might have

been unauthorized, the master is liable. The act of the servant causing the damage may not only be unauthorized, but positively forbidden, yet if it is done while the servant is engaged in the master's business, the master will be liable.

Attention is next called to the *American Railway Express Company* v. *Mackley,* 148 Ark. 227, 230 S. W. 598. In that case the evidence showed that Jeff Hines was in the employ of the express company in the city of Texarkana as a driver, and delivered the perishable express. Mackley was a florist in that city, and his wife worked in his place of business. On the afternoon of March 7, a shipment of flowers was delivered by Hines to the floral shop. Mackley was absent at the time and his wife was in charge. The flowers were delivered in a damaged condition, and Mrs. Mackley asked when they had been received, and when Hines told the number of the train on which they had been shipped, Mrs. Mackley asked Hines why he wanted to lie about it. Mrs. Mackley telephoned to the agent of the express company who sent one Mr. Stuckler and Stuckler and Mackley agreed on an adjustment. Hines left the floral shop without collecting the charges. The flowers had been left there, Hines had performed his duty, and on the next afternoon Hines returned to the floral shop for the purpose of collecting charges and taking a receipt. Mackley walked to the front of the store to sign the receipt book and to pay the charges. There was no disagreement between Mackley and Hines over the charges or the signing of the receipt. While Mackley was signing the receipt Hines referred to the dispute with Mrs. Mackley on the day before. Mrs. Mackley and a friend were seated in the rear of the shop and heard the word "apologize" spoken in a loud tone. Upon looking up Mrs. Mackley saw that her husband's hands were pointed up into the air and that Hines had a pistol pointed in her husband's face. Mrs. Mackley picked up a pistol as she was going past the drawer toward her husband, intending to give it to her husband to defend himself, but before she could do so, Hines shot and killed Mackley, and shot

and seriously injured Mrs. Mackley. It is clear from the facts in this case that Hines was not in any way about the master's business, but he was undertaking to make Mackley apologize for something Mrs. Mackley had said the day before. The court, of course, held that Hines was not in any way connected, at the time, with the business of the express company, but that it was solely because of the personal controversy between Hines and Mackley.

The next case referred to by appellant, *Hough* v. *Leech,* 187 Ark. 719, 62 S. W. (2d) 14, reaffirms the rule announced in the Mackley case, and states the rule to be: "The rule is firmly established that the master is civilly liable for the tortious acts of his servant, whether of omission or commission, and whether negligent, fraudulent or deceitful, when done in the line of his employment, even though the master did not authorize, or know of such acts, or may have disapproved of or forbidden them. But the act must be done not only while the servant is engaged in his master's service, but it must pertain to the particular duties of that employment."

In the case of *Pickens* v. *Westbrook,* 191 Ark. 156, 83 S. W. (2d) 830, the same rule mentioned above is affirmed. All of the authorities are to the effect that if the wrongful act is committed while the servant is about the master's business, has not departed from the master's business, that the master will be liable.

The rule is stated in 18 R. C. L. 795, as follows: "Acts impliedly authorized or such as are within the scope of the employment—that is, wrongs for which the employer may be held accountable—are not susceptible of precise or even very helpful definition by any phrase or short form of expression. Each case must be determined with a view to the surrounding facts and circumstances—the character of the employment and the nature of the wrongful act. Whether the act was or was not such as to be within the employment's scope is ordinarily one of fact for the jury's determination."

"But every departure by the servant from the strict course of his duty, even for a purpose of his own, will

not in and of itself be such a departure from his master's business as will relieve the master of liability for the acts of the servant. The servant may at the same time be combining both his own and his master's business, and in such case the master will be liable for his acts." 18 R. C. L. 797.

We said in the case of *Healey* v. *Cockrill*, 133 Ark. 327, 202 S. W. 229, L. R. A. 1918D, 115: "Much is said in the adjudged cases about the doctrine of slight deviations or 'detours' made by the servant in performing his master's business, and the rule seems to be settled by the weight of authority that where the servant is pursuing the general course necessary to accomplish the purposes involved in his master's business the responsibility of the master is not lessened by the fact that the servant for purposes of his own deviates from the route to be pursued or the particular method to be observed in performing the service. The fact that the servant acts also for himself, while performing service for his employer, and, in doing so, diverts from the usual route or method of performing the service, will not exonerate the employer from the responsibility for misconduct of the servant."

In the instant case, however, although the fire was set out by one of the employee's smoking, there is no evidence that he, at any time, departed from the business of the master. In this case the master sent his employees onto the land of the appellees to get rock, which he was permitted to do by the appellees. If the master himself had gone on the land of another to get rock and while engaged in getting it set out a fire by smoking or otherwise, he would be liable for the damage caused thereby. He has the right to go on the land to get the rock, but with the obligation that no damage will be done to the landowner in getting the rock. Of course, if he would be liable himself for doing the act complained of here, he would be liable if the act was done by an employee whom he had sent there. He takes the right to go on another's land with the obligation that he will remove the rock without committing damages to the landowner.

Having reached the conclusion that the appellant is liable for setting out the fire, it is not necessary to dis-

cuss at length the second proposition. This question was submitted to the jury, under instructions given by the court and not objected to in the argument by appellant. The jury's finding as to the facts are conclusive here, and the appellant does not complain of any instruction given by the court.

We find no error, and the judgment is affirmed.