## McKINNEY v. BLAND.

No. 29721. March 25, 1941.

Rehearing Denied April 29, 1941.

*112 P. 2d 798.*

G. R. Horner, of Okmulgee, for plaintiff in error.

John M. Milner and D. F. Rainey, both of Okmulgee, for defendant in error.

PER CURIAM. This action was commenced by Mark Bland, hereinafter called plaintiff, to recover damages resulting from fire. The action was against W. E. McKinney, hereinafter referred to as defendant.

The defendant was engaged by the plaintiff to combine plaintiff's wheat. During the harvesting operations a fire broke out burning approximately four acres of standing grain.

Arland Curtiss testified that he was the driver of the defendant's combine; that he had stopped the combine during the process of harvesting and rolled a cigarette and had climbed upon the combine to continue the harvest operations when he threw a lighted match into the grain and the grain caught fire resulting in the damages by burning. The evidence is sufficient to establish that the said Arland Curtiss set the wheat afire while smoking and that said smoking occurred during the employment.

The case was tried to the court without a jury, and at the conclusion of all of the evidence the court rendered a judgment for the plaintiff for $87, from which judgment the defendant has appealed.

It is first argued that the master is not liable for the damages resulting from the negligent act of a servant in smoking during his employment. Our court has never passed upon the rule to be announced under a similar fact situation. There appears to be a direct conflict in the cases from the various courts that have passed upon the rule. The first line of authorities is illustrated by Herr v. Simplex Box Corp., 330 Pa. 129, 198 Atl. 309, wherein it is stated that the general rule in America and England is to the effect that a master is not liable for damages resulting from smoking during the employment of a servant, and the reason often assigned is that such act is not within the scope of the employment. This categorical statement of the rule appears,

however, not to be borne out by the facts when the cases are examined. In this connection see Eaton v. Lancaster, 79 Me. 477, 10 Atl. 449; Williams v. Jones, 3 H. & C. 256, 159 Eng. Reprint, 528; Heard v. Flannagan, 10 Vict. L. R. Law 1, and Yore v. Pac. Gas & Electric Co., 99 Cal. App. 81, 277 P. 878. Another rule is exemplified by the following cases: Keyser Canning Co. v. Klots Throwing Co., 94 W. Va. 346, 118 S. E. 521, 31 A.L.R. 283, and note; Vincennes Steel Corp. v. Gibson, 194 Ark. 58, 106 S. W. 2d 173; Triplett v. Western Public Service Co., 128 Neb. 835, 260 N. W. 387; Palmer v. Keene Forestry Ass'n, 80 N. H. 68, 112 Atl. 798, 13 A.L.R. 995; Maloney Tank Mfg. Co. v. Mid-Continent Pet. Corp., 49 Fed. 2d 146. In Palmer v. Keene Forestry Ass'n, supra, a fire was started by the carelessness of the employees of the Forestry Association while setting out trees. A judgment for damages was sustained. In Keyser Canning Co. v. Klots Throwing Co., supra, the defendant's servants threw a lighted match into a waste basket, and a judgment for the plaintiff, whose premises were destroyed, was sustained. In Vincennes Steel Corp. v. Gibson, supra, appellant's servants, gathering rocks from the premises of the plaintiff, carelessly set fire to the grass, and a judgment for the resulting damage was sustained. In Triplett v. Western Public Service Co., supra, the Supreme Court of Nebraska sustained a judgment for damages occasioned by a prairie fire started by the negligence of the defendant's servants while smoking. In Maloney Tank Mfg. Co. v. Mid-Continent Pet. Corp., supra, the defendant was hired to dismantle tanks for the plaintiff on his tank farm, and during the work the carelessness of defendant's servants in smoking caused damage by fire, for which the plaintiff recovered. In affirming the judgment the court, speaking through McDermott, J., stated:

"There is a conflict of authority upon the point, but on principle the rule does not seem to be elusive. Workmen are not employed to smoke, any more than chauffeurs are employed to drive their cars on sidewalks. Smoking is a pastime of the employee, but one which employers know is a common habit of workmen. Under ordinary circumstances, it is not an act accompanied with danger to others. We have no quarrel with cases that decline to hold a master where a servant has stepped aside from his employment and has lighted a cigarette in surroundings where it could not reasonably be anticipated that damage would follow that act. Adams v. Southern Bell Telephone & Telegraph Co. (C. C. A. 4) 295 F. 586, 589; Morier v. St. Paul, M. & M. Ry. Co., 31 Minn. 351, 17 N. W. 952, 47 Am. Rep. 793; Ireton v. Railway Co., 96 Kan. 480, 152 P. 625, L. R. A. 1917F, 1120. But the law is otherwise where the master sends out servants to do work, the nature of which is such that the master knows that damage is apt to occur if the servant smokes or strikes a match. In such a case the duty devolves upon the master to see to it that his servants exercise due care under the existing circumstances. Jefferson v. Derbyshire Farmers, Ltd. (1921) 2 K. B. 281; Palmer v. Keene Forestry Ass'n, 80 N. H. 68, 112 A. 798, and note 13 A. L. R. 997."

The court then proceeded to disagree with the rule announced in certain cases including Yore v. Pac. Gas & Electric Co., supra, and related authorities, and in summing up the proposition stated:

"It is our conclusion that where a master undertakes work in inflammable surroundings, he is responsible if his workmen are careless in the use of fire."

We are convinced that there is sufficient evidence to sustain the finding that the damages resulted from the negligence of servants during the course of the employment.

Finally, it is argued that the amount assessed as damages in the sum of $87 is not sustained by any competent evidence. The record is not very satisfactory on this proposition. There was no attempt by either side to determine the actual damages by reason of the destruction of the acreage other than to determine the market value of the alleged number of bushels of wheat, to wit, 100 bushels. This testimony was to the effect that the wheat was worth 87c per bushel. Finally plaintiff arrived at the conclusion and testified that the 100

bushels were destroyed and that the wheat was worth 87c per bushel. Neither side offered to prove the value of the wheat in the field, nor did either party suggest the reasonable expenses incurred or to be incurred in hauling after the harvesting or combining had been completed. There was some evidence of other damages in the neighborhood of $5. In the absence of a showing as to the cost of hauling after the harvesting or combining, we cannot presume error. Apparently the trial court allowed the market value of 87c for the 100 bushels and disregarded any other damages. It is a well-known rule often applied by this court that this court will not presume error of the trial court. We cannot say that the extra damages disclosed by the testimony would not offset the expenses incurred in harvesting and hauling the grain.

There being no error, the judgment is affirmed.

WELCH, C. J., and BAYLESS, OSBORN, HURST, and ARNOLD, JJ., concur.