Callahan, J.
The plaintiffs were tenants occupying the fourth floor loft of premises 179 Wooster Street, New York City, for manufacturing furniture. The defendant was the *536 owner of the building and occupied the fifth and other floors for the manufacture of dolls. On June 29,1945, a fire originated in the spraying room on the fifth floor" used for the painting of dolls. As a result of the fire, a portion of the plaintiffs’ stock and machinery was damaged largely by water released from the sprinkler system. The plaintiffs brought this action to recover for such damage on the claim that the fire was occasioned through the defendant’s negligence.
There is ample evidence that a highly volatile chemical substance or “ thinner ” was used in the application of paint or lacquer to the dolls. The regulations of the board of standards and appeals of the city of New York, which have the force of ordinances, required a fireproof room for such work. Many other restrictions were also imposed, including the necessity for vapor-proof electrical fixtures, enclosed motors and specified ventilation, a prohibition against smoking, and that the room be continuously under the charge or supervision of a licensed operator holding a certificate of fitness to do the work. The plaintiffs’ proof consisted largely of attempts to show that the fire originated because of the failure of the defendant to carry out one or more of these requirements.
Among the witnesses called by the plaintiffs were the defendant’s foreman Pilo, who was the only licensed operator in the premises, and one Bologna, who was one of three men employed in the spraying room. • Pilo testified that he had not been in the spraying room for a half hour before the outbreak of the fire, as he was required to perform work in other portions of the premises. Bologna testified that he was working at one end of the lacquer machine used in the painting of dolls, when he saw sparks emanate from the motor located near him. He said that he ran into the hallway, where the switch was located, to throw off the power, and, when he returned, found the room in flames.
.Quite a different story was related by the other two employees of the defendant, who were in the room at the time the fire started. These men, Parisi and DiGeorgeo, were called as witnesses by the defendant. - Parisi said that while the machine was in operation, he lit a cigarette in a moment of forgetfulness and threw what he thought was the ember of the dead match on the floor, whereupon everything blazed up. He admittedly knew that he was forbidden to smoke and that there were signs to such effect posted about the premises. He said that he had never smoked on any prior occasion without going outside. He also said at one point in his testimony that he was about to leave *537 for the bathroom at the moment he lit the cigarette. He swore that he had been discharged for smoking immediately after the fire. DiGeorgeo testified to the effect that he saw Parisi take out a cigarette and warned him not to smoke, but Parisi nevertheless struck the match and threw the burned ember on the floor at a place where some drippings of “ thinner ” had spilled a few minutes before while DiGeorgeo was preparing a paint mixture. It would appear to be DiGeorgeo’s claim that the machine was not in operation at the time Parisi threw down the match, and that Parisi had merely been watching the paint mixing operation by DiGeorgeo.
Thus there were conflicting contentions as to how the fire originated and disputes even among the defendant’s witnesses as to the progress of the work and Parisi’s connection therewith at the time that the match was struck.
The trial court charged the jury to the effect that if it came to the conclusion that the defendant had forbidden smoking but Parisi had nevertheless lit a cigarette in violation of orders and thus caused the fire, the defendant would not be liable for the act of Parisi. To this charge the plaintiffs took exception and requested the court to charge, in substance, that the defendant would be liable if the fire was caused by the act of smoking and the jury found that Parisi was at the time engaged in the defendant ’s work and was in the spraying room at the direction and on the business of the defendant, even though the employee had violated the master’s instructions. This request was denied, and the plaintiffs excepted. The jury rendered a verdict for the defendant. The plaintiffs appeal on the ground that the court’s charge and its refusal to charge as requested constitute reversible error.
We find that the court’s charge constituted error in light of the applicable ordinances and the particular facts adduced in this case. The charge relieving the master of liability for the servant’s act of smoking, if the master had forbidden such act, involves two aspects of the law applicable to the situation. In effect, the jury was instructed that the master had fulfilled his duty as to the exercise of reasonable vigilance to prevent fires by the mere issuance of an order against smoking. Further, this portion of the charge had the effect of advising the jury that the smoking in disobedience of the master’s orders rendered the act of the servant outside the scope of his employment.
The degree of care to be exercised by a master is required to be commensurate with the risk involved. Here it is clear *538 that a fire hazard existed and that danger of a conflagration would be increased by the lighting of a match in the spraying room. The defendant was required not only to issue orders to prevent smoking, but to exercise due vigilance to see that the orders were obeyed.
Among the ordinances adopted to guard against fire in the spraying room was rule 5.1 of the Buies of the Board of Standards and Appeals of the City of New York, which reads as follows: “ 5.1 Every premises wherein a spraying, dipping, or immersing space is maintained and operated shall be continuously under the charge and supervision of one or more persons holding a certificate of fitness, whose duty shall be to see that the spray, dipping and immersing space comply with the rules and the terms of the permit are not violated. No other duties shall interfere with the enforcement of these rules while the work is in process. * * *”
The defendant was operating the spraying room under a permit from the city, which required him to comply with the rules of the board of standards and appeals. In view of this fact we think that the jury might consider whether the continued absence of Pilo from the spraying room was a violation of rule 5.1 and whether his presence would have deterred smoking by employees of the defendant. If it found that such violation had occurred and was a proximate cause of the fire, the jury could determine that the defendant had been guilty of negligence by its breach of the rule. Accordingly, it was error to charge the jury that the mere issuance of an order against smoking completely relieved the master of liability.
As to the question of whether the act of smoking was outside the scope of the employment, the controlling rules of law are not easy to enunciate. An essential part of the doctrine of respondeat superior is, of course, that the master is only liable for the acts of the servant performed within the scope of his employment. There are acts involving some degree of deviation from the master’s instructions or even disobedience, for which the master may nevertheless be held liable if done by the servant while carrying out the master’s business (see Brown v. Great Atlantic & Pacific Tea Co., 275 App. Div. 304). It is said that in order to exonerate the master from liability the deviation or departure must be of a sort entirely personal to the servant. Strictly speaking, an employee who smokes on the job for his own pleasure or satisfaction does something that cannot be regarded as furthering the master’s interests. Never *539 theless, the courts have on occasion held that where the circumstances are such that the smoking increases the danger of conflagration, the act of smoking is merely incidental to the general employment and the master is liable because his work is being negligently performed. Liability has also been imposed at times on the theory that where the servant is placed in charge of a dangerous instrumentality, he is negligent in the care or use of the instrumentality when he does some incidental act, though personal in nature, that increases the hazard to others. (See Restatement, Agency, §§ 235, 240.)
In Wood v. Saunders (228 App. Div. 69) the defendant’s employee was smoking a cigarette while filling the tank of an automobile truck with gasoline. While the gasoline was flowing into the tank, he flipped the cigarette across the top of the tank. An explosion followed, and the employee in pulling the nozzle from the tank, splashed flaming gasoline on the infant plaintiff, who was standing on the truck. The court held the master liable, although there was evidence that the defendant had issued instructions against smoking. It cited Jones v. Weigand (134 App. Div. 644) as an authority to the effect that the test is whether the act was done while the servant was engaged in the master’s work, no matter how irregularly or with what disregard of instructions he performs his task. Beliance was also placed on Jefferson v. Derbyshire Farmers, Ltd. (L. R. [1921] 2 K. B. 281; 13 A. L. B. 989), where liability was imposed on a master whose servant was smoking while dispensing benzol. The English case discussed the extra-hazardous nature of the work and distinguished the earlier case of Williams v. Jones (3 H. & C. 602; 159 Eng. Rep. 668), in which a carpenter making a signboard dropped on the floor a burning shaving used to light his pipe and set fire to a shed in which he was working. In the Williams case it was held that the master was not liable for the carpenter’s negligent act, as the smoking had nothing to do with the purpose of the servant’s employment. The Jefferson case distinguished the earlier Williams case on its facts and called attention to the greater hazard involved in the handling of benzol as compared with the work done by a carpenter in making a signboard.
In connection with Wood v. Saunders (supra) it may also be noted that the modification of a companion judgment in an action for loss of services (see Wood v. Saunders, 228 App. Div. 705) was affirmed by the Court of Appeals (255 N. Y. 594). While the question of the master’s liability for the employee’s *540 act of smoking' was discussed in the briefs presented to the Court of Appeals, it is not clear that such question was necessarily decided in view of the state of the record.
The courts of the various jurisdictions are by no means in accord as to the proper rule of law to be applied in a situation of the kind presented by this case. Among the decisions exonerating the master under similar situations of catastrophe caused by an act of smoking on the part of an employee may be cited Adams v. Southern Bell Telephone & Telegraph Co. (295 F. 586); Yore v. Pacific Gas & Elec. Co. (99 Cal. App. 81); Feeney v. Standard Oil Co. (58 Cal. App. 587); Ireton v. Railway Co. (96 Kan. 480); Eaton v. Lancaster (79 Me. 477); Morier v. St. Paul, M. & M. Ry. Co. (31 Minn. 351); Tomlinson v. Sharpe (226 N. C. 177); Herr v. Simplex Paper Box Corp. (330 Pa. 129); Kelly v. Louisiana Oil Refining Co. (167 Tenn. 101), and Shuck v. Carney (22 Tenn. App. 125). To the contrary are such cases as Maloney Tank Mfg. Co. v. Mid-Continent Petroleum Corp. (49 F. 2d 146); Vincennes Steel Corp. v. Gibson (194 Ark. 58); Triplett v. Western Public Service Co. (128 Neb. 835); Palmer v. Keene Forestry Assn. (80 N. H. 68); McKinney v. Bland (188 Okla. 661), and Keyser Canning Co. v. Klots Throwing Co. (94 W. Va. 346). However, with respect to those cases imposing liability on the master for the servant’s negligence in smoking it was remarked in Tomlinson v. Sharpe (supra, p. 183) as follows: “ These cases would seem to rest not on the principle of respondeat superior, but on want of due care on the part of the employer as owner of the premises or instrumentality involved under circumstances importing danger. Annotation 31 A. L. R., 294.”
The closeness of the legal question involved in the employee’s act of smoking while engaged in the master’s business is recognized by the text writers. Pollack discusses the English cases of Williams v. Jones (supra) and Jefferson v. Derbyshire Farms, Ltd. (supra) and calls attention to the suggested case of a minor opening his safety lamp to get a light for his pipe and thereby causing an explosion as illustrative of a situation where the employer would not be liable. (See Pollack on Torts [13th ed.], pp. 92-93.)
However, whether the rule of liability broadly followed in Wood v. Saunders (supra) is to be applied in this case need not be determined at this point. There were disputes in the testimony as to the progress of the work at the time Parisi struck the match and as to what his activities were at the *541 moment in furtherance of the purposes of his employment. Accordingly, on a new trial preliminary questions may arise as to whether the employee was performing the work of the master at the time that he lit the match. We do not mean to indicate that it would be necessary for Parisi to be feeding the machine at that particular instant in order for the jury to find that he was engaged in the employer’s work. It would be necessary, however, for the jury to find that he was generally engaged in performing the work for which he was hired. It would also be necessary to take into account the nature of the hazard involved and the requirements which the law placed on the master to exercise reasonable vigilance commensurate with the risk in guarding against the danger of fire. At this time it is simply sufficient to hold that the trial court committed error in charging to the effect that the master had fulfilled his duty by forbidding his employees to smoke.
The judgment appealed from should be reversed and a new trial ordered, with costs to the appellants to abide the event.
Dore, J. P., Cohn, Van Yoorhis and Shientag, JJ., concur.
Judgment unanimously reversed and a new trial ordered, with costs to the appellants to abide the event.