JOSÉ M. BARALT ET AL., Plaintiffs and Appellees, *v.* COMMONWEALTH OF PUERTO RICO, Defendant and Appellant.

No. 12545. Decided August 11, 1961.

*Guillermo A. Baralt* and *Abelardo Ruiz Suria* for plaintiffs and appellees. *J. B. Fernández Badillo, Secretary of Justice, Arturo Estrella, Assistant Secretary of Justice,* and *Luis Venegas Cortés, Assistant Attorney General,* for defendant and appellant.

Division composed of Mr. Justice Blanco Lugo, as Chief Judge of Division, and Mr. Justice Rigau and Mr. Justice Dávila.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

By Joint Resolution No. 28 of May 27, 1954,[1] the Legislative Assembly of Puerto Rico authorized José

---

[1] Section 1 of the said joint resolution reads as follows:

"José M. Baralt and Esteban Rivera, residents of the municipality of Fajardo, are hereby authorized to sue, within the next twelve months counting from the date this resolution takes effect, the Commonwealth of Puerto Rico, whether or not the latter has acted through a special agent, in a civil action which will enable them to claim before the Courts of Justice pecuniary compensation as indemnity for damages which they allege were caused them by the Commonwealth of Puerto Rico as a result of a fire which occurred on farms belonging to them in Fajardo on April 20, 1953 while the surveys for the new road leading from Río Piedras to Fajardo were being made."

M. Baralt and Esteban Rivera Treviño to bring action against the Commonwealth of Puerto Rico claiming damages allegedly caused to them by a fire which occurred on April 20, 1953, while a survey was being made to lay out a road leading from Río Piedras to Fajardo, at present state highway No. 3. By virtue of that resolution, the State waived in advance the defense that the act that caused the damages was performed by a person other than a special agent, the prescriptive period was extended, and the furnishing of bond was dispensed with.[2] *Acevedo* v. *People*, 69 P.R.R. 402 (1948); *Campis* v. *People*, 67 P.R.R. 366 (1947).

The parties submitted to the lower court a stipulation on the facts and, as to the assessment of the damages, a referee was designated to render a timely report. It appears that on or about April 20, 1953, the Department of Public Works of the Commonwealth was making a survey for the purpose of laying out the new state highway No. 3 on the section lying between the towns of Fajardo and Luquillo. A party of several workers, among whom was Gumersindo Ayala Ponce, was performing the work under the supervision of engineer Rafael Rexach, Jr. It was necessary to perform part of the survey on the property of plaintiff Baralt, for which he had granted the proper authorization. On that day, around two o'clock in the afternoon, the levelman ordered Ayala to take a pole to another laborer who was at a distance. Ayala, who was smoking a cigarette, tried to put it out as he entered the cane field, and in the belief that he had succeeded, tossed the butt on the ground. All of a sudden the dry leaves of the sugar plantation caught fire, which spread to 25.59 cuerdas of sprouts belonging to Baralt and 40 cuerdas of sugar cane belonging to Rivera Treviño.

---

[2] The exemption from giving bond was unnecessary, since as of the enactment of Act No. 410 of May 11, 1951 (Sess. Laws, p. 1092), which amended § 4 of the general act on the matter, No. 76 of April 13, 1916 (Sess. Laws, p. 151), this requirement had been eliminated.

It is conceded that the engineer in charge of the work had given express orders to the laborers not to smoke when entering or working on the cane fields.[3]

Judgment was rendered sustaining the complaint after finding that the laborer's action "in attempting to put out the cigarette in the form, manner, and place he did, was prompted by his interest in complying with the order to perform an act on behalf of the defendant," and also that the person in charge or superior of the laborer was negligent "in permitting him to execute it and to put out the butt the way he attempted to do."

Several errors are assigned in this appeal, but, fundamentally, they are confined to the fixing of liability in view of the fact that the laborer was considered as an agent of the State and that it was determined that the act which caused the fire was in the interest of the defendant. We shall discuss this aspect of the case.

As we pointed out in *Jiménez* v. *People, ante*, p. 195 (1961), in which we considered a similar legislative authorization to sue the State, the scope of the joint resolution transcribed above is to render applicable to this suit the general principles of agency, *i. e.*, to make the State a private employer, responsible for the acts of its agents or employees within the limits or sphere of action of their agency or employment. *Rodríguez* v. *People*, 75 P.R.R. 377, 380 (1953). It is therefore necessary that there exist some relation between the act which caused the damage and the authorized function of the employee, and that it does not serve exclusively the latter's personal interest. *González* v.

---

[3] The lower court also concluded that on the day of the fire the laborer had not been warned and that when he received the order to carry the pole, although he was smoking, he was not warned not to do so before carrying it out. This conclusion is devoid of evidence, since it does not appear among the facts stipulated. However, as we shall see, it was not necessary nor indispensable for the purposes of exacting civil liability. The same may be said of the description as to the way and manner in which the laborer tried to put out the butt.

*Cía. Agrícola,* 76 P.R.R. 373 (1954); *Lloréns* v. *Lozada,* 73 P.R.R. 260 (1952); *Rivera* v. *Maldonado,* 72 P.R.R. 448 (1951); *Maysonet* v. *Heirs of Arcelay,* 70 P.R.R. 155 (1949); *Suárez* v. *Saavedra,* 60 P.R.R. 589 (1952); II Harper and James, The Law of Torts 1390, § 26.9 (1956).

The specific situation of the employer's liability for an act of its agent or employee in tossing a cigarette or causing a fire in the course of employment has been the object of consideration on several occasions by the American courts. As is frequently the case, several solutions have been offered. We shall examine briefly the typical cases, with special attention to the reasoning in support of each of the results.

A crew of workmen was engaged in reconstruction certain electric-power lines owned by a corporation. The lines extended along a right of way which was covered with grass and dry leaves. A fire was started from a live cigarette butt or match thrown away by one of the workmen. The court said that the defendant was aware of the highly inflammable condition of the dry grass and that it was its duty to prohibit the careless use of cigarettes or matches by its employees, and that if the employer was aware of the laborers' carelessness, under the conditions described, it could be held liable for retaining them in its employ. However, the claim was dismissed because the record was devoid of such knowledge. *Yore* v. *Pacific Gas & Electric Co.,* 277 Pac. 878 (Cal. 1929). It was further said that neither the employees' habit of smoking nor their act in throwing away butts or matches were acts performed while engaged in digging holes or setting electric-pole lines, and that they were rather acts of the employees to serve their own pleasure for which the employer was not liable. See *Ireton* v. *Atchison, T.&S.F. Ry. Co.,* 152 Pac. 625 (Kan. 1915); *Marrier* v. *St. Paul M.&M. Ry. Co.,* 17 N.W. 952 (Minn. 1884); *Tomlinson* v. *Sharpe,* 37 S.E.2d 498 (N.C. 1946).

In *Feeney* v. *Standard Oil Co.,* 209 Pac. 85 (Cal. 1922), an employee of a gas-distributing company started a fire

when he carelessly dropped a match used in lighting a cigarette. The floor of the claimant's service station was covered with a large quantity of gasoline which was spilled when the gasoline was delivered. In dismissing the action against the Standard Oil Co., it was said that the act of lighting a cigarette was not part of the defendant's business and that it was merely an independent act of the employee for his personal pleasure, and that the fact that it occurred in the course of employment was not sufficient to exact liability from the employer. See *Herr* v. *Simplex Paper Box Corporation*, 198 Atl. 309 (Pa. 1938); *Kelly* v. *Louisiana Oil Refining Co.*, 66 S.W.2d 997 (Tenn. 1934); *Schuck* v. *Carney*, 118 S.W.2d 896 (Tenn. 1938).

A repairman of a telephone company emptied his smoking pipe on a customer's yard on the occasion of paying a visit for the purpose of finding out why his telephone was not in order. Evidently the cut tobacco had not completely burned out and a fire started. In *Adams* v. *Southern Bell Telephone and Telegraph Co.*, 295 Fed. 586 (C.C.A. 4, 1924), it was held that the refusal of the court to instruct the jury in the sense that the employee was acting within the scope of his employment was not erroneous. In our opinion, the true importance of the opinion rendered is the distinction which it makes when the nature of the employee's task is inherently dangerous, or when there are obvious perils under the circumstances surrounding the task committed. We will refer below to this aspect.

In *George* v. *Bekins Van & Storage Co.*, 205 P.2d 1037 (Cal. 1949), reference is made to court decisions which have held the employer liable for fires caused by its employees in circumstances similar to those which we have considered, on the basis of the determination that the peculiar functions and conditions of the employment create an unreasonable risk to the property of third parties, despite the care it has taken to prevent smoking. In other words, that there is taken into consideration the inherently dangerous risk which

for these purposes arises as a result of employment. Hence the reference in *Bluestein* v. *Scoparino*, 100 N.Y.S.2d 577 (1950), that the degree of care to be exercised by the employer is commensurate with the risk involved by reason of the nature of the task, and that the employer be required not only to expressly prohibit smoking, but to exercise due and necessary vigilance to see that the orders are obeyed. It is true that smoking is a common habit of which employers are aware and is not ordinarily accompanied with risk or danger to others. There is no duty to pay damages when the cigarette is lighted in places where it can not be reasonably anticipated, the situation differs and the duty devolves upon the employer to see to it that the workman exercises due care under the circumstances. *Maloney Tank Manufacturing Co.* v. *Mid-Continent Petroleum Corp.*, 49 F.2d 146 (C.C.A. 10, 1931); *McKinney* v. *Bland*, 112 P.2d 798 (Okla. 1941); *Palmer* v. *Keene Forestry Ass'n*, 112 Atl. 798 (N.H. 1921); *cf. Triplett* v. *Western Public Service Co.*, 260 N.W. 387 (Neb. 1935); *Keyser Canning Co.* v. *Klots Throwing Co.*, 118 S.E. 521 (W. Va. 1923); *Wood* v. *Saunders*, 238 N.Y.Supp. 571 (1930).

Harper and James, *op. cit.*, § 26.8, at 1386, discusses the situation under consideration as follows: "There are also acts which do not involve deviation from the assigned task—which are done on the job but which in no way tend to further it. Typical of these is smoking, with its attendant fire hazards. Presumably all courts would hold the master if he permitted smoking *or failed to take reasonable steps to prevent it on jobs where it was unreasonably dangerous.*"

This is precisely the proper solution to be adopted in the instant case. The serious risk involved in smoking in a place such as a sugar-cane plantation is of general knowledge. The State did not take, in our opinion, the precautions necessary in order to prevent the undue risk to which the owners who permitted the use of their properties to make

the surveys were subjected. The plaintiffs had the right to expect that no damage would be done to them by the use of that license. *Vincennes Steel Corporation* v. *Gibson*, 106 S.W.2d 173, 175 (Ark. 1937). It was not sufficient to give orders not to smoke when entering or while being on the sugar-cane plantations. An active supervision was necessary to see that these orders would be strictly carried out, in view of the "inherently dangerous" risk involved, *cf. Martínez* v. *U.S. Casualty Co.*, 79 P.R.R. 561 (1956); *González* v. *Cía. Agrícola*, 76 P.R.R. 373 (1954); *Lloréns* v. *Lozada*, 73 P.R.R. 260 (1952); since as we have already stated, the degree of care to be exercised by the employer must be commensurate with the greater risk involved, under the special circumstances surrounding the instant case. Truly, we are not concerned, strictly speaking, with the application of the doctrine of *respondeat superior*, for the act of smoking has no reasonable relation to the employment and is rather a workman's personal pleasure, nor can it be affirmed that it is for the benefit of or to serve the employer's interests. Rather, it is a question of foreseeability.

Nor was the error relative to certain items of damages included in the referee's report committed.

The judgment rendered by the Superior Court, San Juan Part, on June 4, 1958, will be affirmed.