ARKANSAS WESTERN RY. CO. v. CURRIER.

5-428                                                    270 S. W. 2d 932

Opinion delivered July 5, 1954.

[Rehearing denied October 4, 1954.]

*Hardin, Barton, Hardin & Garner,* for appellant.

*Bates, Poe & Bates,* for appellee.

WARD, J. This appeal results from a jury verdict against appellant in a suit brought by appellee for damages for personal injury. Appellant seeks a reversal on two grounds: First, the trial court's refusal to grant appellant's motion for a directed verdict at the close of all of the evidence, urging (a) appellant's employees were acting outside the scope of their employment and (b) the insufficiency of the evidence, and; Second, the trial court's action in giving instruction No. 1.

*The Facts and Circumstances* out of which this litigation arose are as follows: Appellee, Harrison Currier, was injured early in the morning on June 2, 1953, while helping move one of appellant's railway cars by means of a tractor which he was driving and which had been attached to the end of the car by means of a rope. When the car was started it overtook the tractor and in some way a part of the tractor became engaged with the rail, causing the tractor to tilt and appellee to fall, resulting in the injury complained of. Also, in some manner, the foreman and members of appellant's section crew were either directing the movement or were attempting to help in the movement of the railway car.

At the time of the injury appellee was in the regular employment of one Dean Swift who was a contractor engaged in repairing streets in the town of Waldron, Arkansas. This repair work necessitated the use of gravel, and Swift had an agreement with appellant railway company to furnish the gravel in railway dump cars placed on a siding near Waldron. It appears that the dump cars were to be spotted on the side track in groups of from three to four at a time, and on this particular occasion there were three cars so spotted. By arrangement with appellant, Swift dug a tunnel under the side track where each car could be placed as necessity required and the gravel could be unloaded through trap doors in the bottom of the car, thus facilitating the loading of the gravel onto Swift's trucks. Appellant did not keep a switch engine at Waldron and so it was contemplated that each car of gravel would be "pinched" or rolled in place over the tunnel. Appellant contends, but appellee denies, that

such placing or the dump cars over the tunnel was the sole responsibility of Swift.

*Appellee's allegation of negligence* was appellant's "failure . . . to apply the brakes" on the railway car and to give proper warning to appellee, causing the car to run away and overturn the tractor, and resulting in the alleged injury. The extent of injury and the amount of recovery are not challenged. Much of the testimony on behalf of appellee herein set out is disputed or contradicted by appellant's testimony, but, under the well established rule we must accept the jury's finding on questions of fact as they are supported by substantial evidence.

*The first contention* by appellant is that the trial court should have instructed a verdict in its favor for the two reasons which we presently discuss.

(a) As before stated, appellant contends that it was Swift's sole responsibility to spot the cars, that it was no part of the duty or employment of the section crew to assist in any way, and that therefore any participation on the part of said crew was wholly without the scope of their employment. We do not agree with this contention because this was a question for the jury to decide under proper instructions, and although numerous instructions were given on this point by the court it is not urged by appellant that these instructions were erroneous. In the case of *W. P. Brown & Sons Lumber Company* v. *Oaties*, 189 Ark. 338, 72 S. W. 2d 213, in discussing this question, we said:

"Whether appellee was a mere volunteer and acting without the scope of his employment was a question of fact, and was submitted to the jury under instructions requested by appellant. We cannot say as a matter of law that he was a mere volunteer."

The above rule was restated in the case of *Missouri Pacific Railroad Company, Thompson Trustee* v. *Lester*, 219 Ark. 413, 242 S. W. 2d 714, 27 A. L. R. 2d 1182, where after posing the question, it was said: "At any rate, it

was a question for the jury under instructions which, in this case, were proper.''

Testimony on the part of appellee, which the jury had a right to believe, was to the effect that Mr. Tom Gray, the station agent at Waldron, advised appellee late in the evening on the day before the accident that if he would wait until the next morning the railway company would spot the car. There was also testimony to the effect that while ordinarily it was not the business of the section crew to spot cars yet it was their duty, as agent of appellant, to see that the main track was kept clear for regular trains. The testimony shows that on the day of the injury the main track was blocked by the gravel cars and that it would be necessary to clear the track for the next train which was expected in a day or two. Appellee testified that the station agent instructed him to attach his tractor to the car and that Earl Sherrill, foreman of the section crew, gave directions as to how the car should be moved and as to when appellee should start to pull with his tractor. It is admitted that Sherrill and members of his crew did assist in helping spot the car.

In view of the fact that the section crew were in the general employment of appellant and in view of the circumstances and facts related above the jury was justified in holding appellant liable. In the case of *Vincennes Steel Corporation* v. *Gibson,* 194 Ark. 58, 106 S. W. 2d 173, this court, at page 60 of the Arkansas Reports having under consideration the question here discussed, quoted with approval the following:

''The difficulty lies in the application thereof, as there is no definite rule by which it can be said that the acts of a servant are within or without the scope of his employment, each case of necessity depending upon its own peculiar facts and circumstances.''

Later in the same case and in the same connection the court said: ''Whether the act was or was not such as to be within the employment's scope is ordinarily one of fact for the jury's determination.''

(b) Appellant insists however that, regardless of the contention made above, there is no substantial evidence to support the verdict of the jury, the argument being that there is no substantial evidence to show that Sherrill or any member of the crew was guilty of negligence. Again we do not agree with this contention. Appellant pleaded contributory negligence on the part of appellee, but this question was submitted to the jury under instructions of the court which are not here challenged.

Appellee, after stating that he was servicing his tractor nearby just prior to the time when the car was to be moved, gave the following testimony:

"Q. While you were doing that, did anybody call you to come over there?

"A. They were over there trying to move this car.

"Q. Who are they, now?

"A. The section crew was there, Kelly Martin, Emmett Winchell, Dale Sheets and Harve Davis.

"Q. Where was the section foreman? Was he there?

"A. He was there by the car pulling this lever.

"Q. Now then who called you? What man called you over there?

"A. Tom Gray called me up there.

"Q. Told you to do what?

"A. To hook on and help the boys."

. . . . .

"Q. And you say you came on up there and hooked on to the car?

"A. When Tom Gray called me up there I went up there to hook on.

"Q. And where did you hook on to it again?

"A. Right on the front axle."

"A. Tom Gray told me to back my tractor up there and had them tie me on."

. . . . .

"A. Tom Gray called me up and told me to give the boys a lift."

. . . . .

"Q. And when you looked back you looked back where?

"A. I was looking back to see if they were all ready.

"Q. And they hollered that they were, didn't they?

"A. Earl Sherrill hollered 'let's go.' "

. . . . .

"Q. Did you succeed in moving the car? Was the car moved?

"A. Yes, sir, the car moved.

"Q. Were the section men pinching the car along at the same time?

"A. They gave me a start and we went on with it."

. . . . .

"Q. Did the car move with some speed when it did get started?

"A. Yes, sir, after it got across the switch when the flange in this switch here, after we got it over that, it just taken right off or it outrun me.

"Q. What happened when that took place?

"A. The truck just kept going; there was nobody there on the brake and the car went this way (indicating) and just turned it right around on its edge there and turned it up on its side."

It was the contention of appellee, who himself had formerly been employed in railroad work, that Sherrill, as section foreman, should have had one of his crew stationed at the hand brake on the car in order to slow it

down or stop it, and that this negligence or failure caused his injury. He testified:

"Q. When they attempted—the rule would have been that when they moved that car a railroad employee should have been put on the brakes? Is that right?

"A. Yes, sir.

"Q. Now then did they have a man on the brake?

"A. They did not have a man on the brake, no, sir.

"Q. Did you know that they didn't until after the accident?

"A. I did not know it."

Appellee was asked if he knew from his experience whether there was a company rule with reference to a man being on the brake when a detached car is moved in the switch yard, and he was asked:

"Q. That was the rule?

"A. Yes, sir, that was the rules and regulations for us to have a man on the brake. . . ."

. . . . .

"Q. And that was the practice that prevailed with reference to when a car was moved that a man be placed on the brake?

"A. That's right."

*The second contention of* appellant is that the court erred in giving instruction No. 1 to the jury. We see no reversible error in this instruction. It is rather lengthy and it would serve no useful purpose, we think, to set out the instruction in full. The instruction touched on the question of the scope of·employment as it related to the station agent and the section crew but this question was covered in other instructions which are not objected to here. It ended by saying that appellee could not recover if he was guilty of contributory negligence, but this was properly explained in other instructions, likewise not questioned.

The main objection, apparently, to the instruction is based on the fact that it contained language which predicated recovery upon appellant knowing (or should have known) that *danger was apparent* in moving said car. It is insisted by appellant that this "so-called doctrine" was foreign to the issues in this case. If it be conceded however that this "doctrine" was foreign to the issues, still appellant has not been prejudiced because the instruction was more favorable to it than the law warranted. Since there is testimony from which the jury could have found that appellant's agents were directing appellee in the manner and method of moving the car, it was justified in fixing liability on appellant regardless of whether its agents recognized that danger was apparent if it should also find, as it had a right to do and apparently did, that appellee's injury was the result of negligence of appellant's agents.

A similar question of liability, posed by a different fact situation, was discussed and determined in *St. Louis, Iron Mountain & Southern Railway Company* v. *Washington,* 114 Ark. 184, 169 S. W. 770. There appellant sought to escape liability for an injury, received by appellee from an explosion of dynamite in an effort to remove piling, on the ground that it had not agreed to help and also on the ground that the person who set off the explosion was not its employee. The court held that the question of an agreement was not material and that the other question was for the jury to decide, and the court disposed of the question of liability with this statement: "The man who fired the dynamite being at work under the direction of the railroad company at the time determines its liability."

Here it is conceded that appellant's employees were actually engaged in [at least] helping move the car, and there was evidence to support the jury in finding that they were directing the work while in the scope of their employment. Under these circumstances it was not necessary for the jury to find that appellant's employees "could or should have known that danger was apparent." If their negligence was the proximate cause of appellee's

954

injury, as the jury was justified in finding under the testimony, then appellant was liable, and it cannot now complain if the jury also found said employees should have recognized that "danger was apparent."

Affirmed.