Alvin H. FRANKEL, Admn. of the Estate
of Fred Ashley, Deceased,

v.

Alonzo MOODY and City of Philadelphia,
City of Philadelphia, Appellant.

No. 16748.

United States Court of Appeals
Third Circuit.

Argued Dec. 21, 1967.

Decided April 25, 1968.

Rehearing Denied May 21, 1968.

Theodore H. Lunine, Asst. City Sol., Philadelphia, Pa. (John M. McNally, Jr., Deputy City Sol., Matthew W. Bullock, Jr., Second Deputy City Sol., Edward G. Bauer, Jr., City Sol., Philadelphia, Pa., on the brief), for appellant.

Alexander A. DiSanti, Richard, Brian & DiSanti, Upper Darby, Pa., for appellee.

Before BIGGS, McLAUGHLIN and VAN DUSEN, Circuit Judges.

OPINION OF THE COURT

BIGGS, Circuit Judge.

The defendant-appellant, the City of Philadelphia, has appealed from a judgment in favor of the plaintiff-appellee, Frankel, Administrator of the Estate of Ashley, in the sum of $76,530.-50 under the Pennsylvania Wrongful Death Act, 12 P.S. § 1601, and in the sum of $500.00 under the Pennsylvania Survival Act, 20 P.S. § 320.601. Jurisdiction in both claims is based on diversity of citizenship and statutory amount, 28 U.S.C.A. § 1332, and all relevant facts

having occurred in Pennsylvania, the law of that state is applicable.

The case was tried to the court and the salient facts follow. On January 16, 1965, at about 8 P.M., the defendant Moody, then a police officer employed by the City, entered the store of Fred Ashley and unintentionally shot and killed him. At the time of the shooting Moody was assigned to duty with the highway patrol division of the City's police department. Moody and Ashley had been friends for several years and on various occasions in the spirit of horseplay had engaged in mock "quick draw" contests in which each would pretend to draw his revolver and shoot the other. Ashley had never actually drawn his revolver which he kept at his waist covered by a zipper jacket, whereas Moody had drawn his at least once out of the twelve or more times when these mock contests occurred. On the evening in question, Ashley was seated behind a small desk or counter in the office portion of his store, to the right of the front door. His revolver was tucked under the belt, at his left side, completely covered by his jacket. He was seated in a swivel chair, with his arms folded across his chest, engaged in casual conversation with his step-son. Moody entered the office, made a complete turn and faced Ashley, at the same time drew his revolver, which discharged. The bullet struck Ashley in the head, killing him instantly. The only issue on this appeal is whether the City of Philadelphia was properly held liable, under the doctrine of respondeat superior, for the actions of Moody.

It is undisputed that on the night of the shooting Moody had stopped at Ashley's place of business in order, at least in part, to discover if the latter could provide information useful to him in his police work. The City denies that Moody was authorized to cultivate such infor-

mants to obtain such useful information. The only evidence presented bearing directly on this issue was given by Moody himself. He stated that developing such contacts was left to the discretion of the individual officer. The City offered no rebuttal evidence on this point.

The court below found that Moody was negligent, that his negligence was the direct cause of Ashley's death, and that the negligence occurred within the scope of Moody's employment as a Philadelphia police officer. The trial judge did not decide, however, whether the shooting occurred because Moody was engaging in another "quick draw" contest or whether Moody imagined or misinterpreted some gesture by Ashley which caused Moody to draw his weapon as a "reflex action". It is not clear from the record how Moody's gun became cocked and discharged a live shell.

■ The trial judge in his opinion stated: "However, I am completely satisfied, * * * that the officer's handling of his weapon at the time of the shooting was either (a) an attempt to continue the existing rapport between the officer and the deceased, for the sake of continued accessability to valuable information pertinent to his police duties; or (b) a reflex reaction resulting from habit stemming in part from a previous course of such rapport-building incidents and in part from a perversion of his general police training * * *."[1] Thus the trial judge was of the opinion that the City would be liable whether or not Moody thought he was engaged in a "quick draw" contest or whether his action resulted as a reflex from his general police training. We agree for the reasons which follow.

■ Unless it be found that an employee is acting outside the scope of his employment as a matter of law, the issue of scope of employment is one to be de-

---

[1]. Although an opinion by the court generally cannot be used to contradict its findings of fact, England v. Gebhardt, 112 U.S. 502, 506, 5 S.Ct. 287, 28 L.Ed. 811 (1884), as modified by Loeb v. Columbia Township Trustees, 179 U.S. 472, 481–485, 21 S.Ct. 174, 45 L.Ed. 280 (1900), the opinion can be used to supplement or explain the findings. See Bowles v. Dodge, 141 F.2d 969 (9 Cir. 1944).

termined by the finder of fact. Straiton v. Rosinsky, 183 Pa.Super. 545, 133 A.2d 257 (1957). Moody's cultivation of informants and hence his visit to Ashley's store on the night in question was within the former's scope of employment as a police officer as was found by the court below. It appears, absent the possibility that Moody thought he was engaged in a "quick draw" contest, that a reckless or negligent drawing of a weapon by a police officer as a result of a reflex action, would be within the officer's scope of employment. Carrying a weapon and being prepared to react quickly to use the weapon is an essential part of a policeman's training and duties. If the shooting here was the result of a reflex of Moody's mind and body it cannot be considered significantly different in kind than the act which results when a policeman unintentionally shoots an innocent bystander in a negligent attempt to shoot an escaping criminal. In such circumstances, some courts have held that a municipality would be liable under the doctrine of respondeat superior even if it had not, contrary to the applicable law in the case at bar,[2] waived its sovereign immunity. See, e. g., McAndrew v. Mularchuk, 33 N.J. 172, 189–197, 162 A.2d 820, 830–834 (1960). See generally, 88 A.L.R.2d 1313 et seq.

On the other hand, if the shooting occurred because Moody thought Ashley was engaging him in a "quick draw" contest, a more difficult question is presented. The City contends that such horseplay, even if partly intended to further the interest of the police department, is so outrageous as to be entirely unforeseeable by the master and consequently outside the scope of the servant's employment as a matter of law, citing Vadyak v. Lehigh & New England R. R. Co., 318 Pa. 580, 179 A. 435 (1935) and Tshudy v. Hubbs Stores Corp., 310 Pa. 285, 165 A. 238 (1933). In Vadyak, supra, relied on by the City, the Supreme Court of Pennsylvania held that judgment n. o. v. was properly entered for the defendant railroad in a suit brought by a child who was injured when defendant's engineer, solely in a spirit of mischief, discharged steam on the plaintiff. But Vadyak does not support the City's position in the case at bar for the basis of decision in that case was stated as follows: "It was not an act the performance of which at that time and place was shown to be in any way in furtherance of the employer's business, but was done by the engineer on his own account, and the trial judge properly found, as a matter of law, that, the act being solely a personal one of the engineer, outside the scope of his duty, the railroad company could not be held responsible for damages. * * *" 318 Pa. at 582, 179 A. at 436. In the instant case there is ample evidence to support the trial judge's opinion that the "quick draw" contests were designed and intended in part to further the interests of the police department, albeit in a most misguided manner.

Tshudy, supra, also relied on by the City, is to substantially the same effect as Vadyak and like that decision provides little support for the City's position. In Tshudy, the Supreme Court of Pennsylvania affirmed a compulsory nonsuit in an action brought by a customer of the defendant store. The plaintiff had entered the store to make a purchase, and tried to get the attention of the manager by touching him on the back, while the latter was in a stooping position trimming lettuce with a knife. For some unexplained reason, the latter turned and raised the knife as if to throw it at the plaintiff. The knife slipped and injured the customer. The court stated: "Whether this action was simply careless, or whether it was malicious, it was his own, and was not incident to the authority granted." 310 Pa. at 286, 165 A. 239. Of special importance to the resolution of the issue at bar is the court's statement: "There is nothing in the evidence to support appellant's theory that the manager of the store was merely preparing to put the knife aside in

---

2. See Ordinance enacted February 8, 1962, Code of Ordinance, § 21–701.

order to be free to attend to the customer's wishes." Ibid. The thrust of the last quoted statement appears to be that liability can only be imposed on an employer if the act complained of in some way was in furtherance of the master's interests. As noted previously, the trial judge found the "quick draw" contests in the case at bar to be a misguided attempt to further the interests of the police department.

■ The test of respondeat superior, albeit not in a "horseplay" case, has been stated generally as follows: "[B]ecause with such acts the employer has nothing to do, they are not an incident of, or part of, or in furtherance of, and therefore not within the scope of, the employee's employment. * * * Here * * * the servant was doing nothing in furtherance of or in connection with his employer's business." Herr v. Simplex Paper Box Corp., 330 Pa. 129, 131, 198 A. 309, 310 (1938).

■ It is true, however, that the Pennsylvania Supreme Court has held that " 'although an act is a means of accomplishing an authorized result, it may be done in so outrageous or whimsical a manner that it is not within the scope of employment.' " Potter Title & Trust Co. v. Knox, 381 Pa. 202, 207, 113 A.2d 549, 551 (1955). Accord: Lunn v. Yellow Cab Co., 403 Pa. 231, 169 A.2d 103 (1961). In Potter a compulsory nonsuit entered by the trial judge was affirmed and in Lunn a refusal by the trial judge to grant a judgment n. o. v. in favor of the defendant was reversed. Both decisions rest on the ground that in the circumstances presented in those cases, the respective servants were not within the scope of their employment as a matter of law when they committed the tortious acts. In so holding the Pennsylvania courts have relied on the Restatement, Agency §§ 229, 231 and 235. In adopting the Restatement, however, it does not appear that Pennsylvania has accepted the principle that all horseplay as a matter of law is outside the scope of employment, but rather seems to have adopted the principle set out in the Restatement as one of construction to aid the discovery of whether the principles enunciated in Vadyak, Tshudy and Herr, supra, are present; viz., whether the act complained of was intended in any way to serve the interests of the master. That ultimate question remains the province of the finder of fact. As the court stated in Potter, supra, 381 Pa. at 207–208, 113 A.2d at 551, quoting from the Restatement, Agency, § 235 comment c: " 'The fact that an act is done in an outrageous or abnormal manner has value in indicating that the servant is not actuated by an intent to perform the employer's business * * *. In such cases, the facts may indicate that the servant is merely using the opportunity afforded by the circumstances to do the harm. Hence, unless the principal has violated a personal duty to the person injured, or unless he becomes liable because of the nature of the instrumentality entrusted to the servant * * *, he is not liable for such acts.' " And it was stated in Lunn v. Yellow Cab Co., supra, 403 Pa. at 234, 169 A.2d at 104: "In determining whether or not the defendant-cab company is entitled to judgment n. o. v., the narrow question is, whether or not under the proof submitted, the question of respondeat superior was one of fact for the jury. Was the evidence sufficient to support the jury's conclusion that Boyd's assault on Lunn was within the scope of his employment?"

■ The trial judge said in the case at bar: "I consider this not a case of an employee indulging in horse-play outside the scope of his employment, but rather a case of an employee indulging in horse-play as a method of attempting to carry out the duties of his employment." The trial judge's conclusion has ample support in the record.

The case at bar may also be distinguished from Potter and Lunn on the ground that both Potter and Lunn involved an intentional tort whereas the trial judge in the case at bar specifically found the tortious act, the shooting, to

have been unintentional. The doctrine of respondeat superior historically has been more limited where the servant's tort was intentional as opposed to when the tort was merely negligent. See, Prosser, Torts, 3d ed. 476 et seq. Compare Howard v. Zaney Bar, 369 Pa. 155, 85 A.2d 401 (1952).

The judgment of the court below will be affirmed.